BERNARD JACOBS *et al.*, Plaintiffs-Appellees, v. J. ROBERT JAMES, Defendant (Elmo Meiners, Defendant-Appellant).

Fourth District   No. 4—90—0774

Opinion filed June 27, 1991.

Don C. Hammer, of Hayes, Schneider, Hammer, Miles & Cox, of Bloomington, for appellant.

John R. Luedtke, of Luedtke, Hartweg & Turner, of Bloomington, for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiffs brought this action against defendants J. Robert James (James) and Elmo Meiners (Meiners) to recover damages from the sale of unregistered securities in violation of section 13 of the Illinois Securities Law of 1953 (Securities Law) (Ill. Rev. Stat. 1983, ch. 121½, par. 137.13). After a bench trial, the court entered judgment in favor of plaintiffs, and defendant Meiners appeals. Meiners challenges both his liability under the Securities Law and the award of attorney fees in the amount of one-third of plaintiffs' recovery. We hold the trial court correctly found Meiners liable under the Securities Law, and was permitted to consider the plaintiffs' contingent-fee agreement with their attorney when determining a reasonable award of attorney fees. We affirm.

Gibson Bancshares Corporation (Bancshares) is a bank holding company. At the time of the transactions at issue, Meiners was chairman of the board and a director of Bancshares, and James was Bancshares' president, and also a director. Plaintiffs Bernard Jacobs, Noleen Jacobs, and Maxine Mars purchased three subordinated debenture notes of Bancshares in 1984. The notes had a total face value of $29,500 and earned 14½% interest, payable semiannually, and the notes had a three-year term of maturity. Plaintiffs purchased the debenture notes from James, whom the Jacobs knew socially and also as the president of the First National Bank and Trust of Gibson City. Plaintiffs did not deal with or know defendant Meiners. When Bancshares failed to make its interest payment and repay the principal on the notes, plaintiffs filed a notice of rescission pursuant to sections 13(A) and (B) of the Securities Law (Ill. Rev. Stat. 1983, ch. 121½, pars. 137.13(A),(B)). Bancshares did not rescind the sales made to plaintiffs, pay the interest due, or refund plaintiffs' investment.

Bancshares had a history of financial difficulty and, at one time, the Federal Reserve directed it to infuse more capital. In 1978, Bancshares had borrowed $1.2 million, and 10 years later only $75,000 of the principal had been repaid. Defendants Meiners and James were personally liable in the amount of $500,000 on this loan. Bancshares was lacking capital in 1984, and it had borrowed money from Meiners. When Bancshares needed money to pay interest on the $1.2 million loan, Meiners loaned money to the corporation and the corporation issued him debentures in return.

In November 1982, James was approached by Bancshares' officials and accountants, including Meiners, to put together $1 million of capital for Bancshares: $500,000 was to be raised by James, and

$500,000 was to be furnished by Meiners. As part of this deal, James was to become the chief executive officer of Bancshares. At the annual shareholder meeting of Bancshares on February 21, 1984, James was elected president, Meiners was reelected chairman of the board, and both were elected as directors. As of February 21, 1984, James owned 365,564 shares of Bancshares, and Meiners owned 633,054, out of the total 1,277,480 outstanding shares.

On June 24, 1984, at a special meeting of the directors, the board voted to issue an additional $100,000 in debentures. Both James and Meiners voted in favor of issuing these debentures. The minutes of this meeting stated that James was directed to sell the debentures only to shareholders and their family members. James testified, however, that he was told he could sell debentures to anyone, and was unaware of this restriction until he read the stipulation of the minutes of the meeting, and that the debentures were not discussed by the directors in terms of the debenture sales being restricted. There were no such restrictions printed on the debentures themselves.

James testified that Meiners had a running knowledge of debenture sales because every Bancshares' officer received a quarterly report stating the dollar amount of the debentures sold. Meiners testified the report did not reveal the identity of the buyers. James testified he discussed with Meiners the sale of debentures to plaintiffs after the sale. James also testified he spoke with Meiners every two weeks about Bancshares' financial affairs, including the sale of debentures. He testified that he told Meiners of the sale of debentures to the Jacobs after the sale. A list was maintained of all debenture notes sold after June 20, 1984, which included the dates of purchase, names and addresses of the purchaser, and the dollar amount of the debentures sold. James testified this list was distributed to Meiners. James also stated that he was never criticized by Meiners for the sale of any debentures after he became president. James testified that everything he did in the sale of debentures was fully disclosed, and he never made any effort to keep information from Meiners.

Meiners' testimony regarding the sale of debentures conflicted with James' testimony. Meiners testified he had no knowledge of the sale of debenture notes to plaintiffs until almost three years after they had been sold, when he discovered in a meeting in 1987 that Bancshares did not have the funds to pay the debentures. Meiners was asked whether he talked with his son Ron, who was the secretary of Bancshares and who signed the debentures. Meiners stated that he could not answer that question because "my memory don't serve me that good."

The trial court found defendants James and Meiners jointly liable for plaintiffs' principal and interest. The court also awarded plaintiffs their attorney fees pursuant to the Securities Law. Plaintiffs had entered into a one-third contingent-fee agreement with their attorney, which would result in a $12,171.91 fee on the approximately $36,000 recovery won at trial. A hearing was held on the matter of attorney fees. Plaintiffs' attorney presented evidence of the hours he spent on plaintiffs' case, which would have resulted in a $9,562 fee based on $100 per hour for attorney time, and $40 per hour for a paralegal's work. At this hearing, two attorneys called as expert witnesses testified that they examined the files of the case, and they found the one-third contingent fee to be a fair and reasonable fee, based on the amount of time plaintiffs' attorney spent, the amount of the recovery, and the experience and expertise of plaintiffs' attorney. Both attorneys also testified that the fee based on the hourly rate would also be fair and reasonable. The court found plaintiffs entitled to recover from defendants "an additional amount equal to one-third of their recovery from Defendants for the return of their investment."

The sale of the debentures clearly violated the Securities Law. The securities were unregistered, were sold to plaintiffs without providing a prospectus, and plaintiffs were not partners, executive officers, or directors of Bancshares. (Ill. Rev. Stat. 1983, ch. 121½, par. 137.4(S).) The liability of James is clear and he is not a party to this appeal. Meiners, however, contends that he is not liable because he did not induce the plaintiffs' purchase of the debentures and was not involved in the sale of the debentures prior to the consummation of the sale.

■ The Securities Law imposes liability on those involved in selling securities in violation of the Securities Law. The Securities Law provides:

> "[U]pon tender to the seller or into court of the securities sold *** the *issuer, controlling person,* underwriter, dealer *or other person by or on behalf of whom said sale was made,* and each underwriter, dealer or salesperson who shall have participated or aided in any way in making such sale, *and in case such issuer,* controlling person, underwriter or dealer *is a corporation* or unincorporated association or organization, *each of its officers and directors *** who shall have participated or aided in making such sale, shall be jointly and severally liable* to such purchaser for (1) the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest *** in the securities sold *** and (2) the reason-

able fees of such purchaser's attorney incurred in any action brought for recovery of the amounts recoverable hereunder." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 121½, par. 137.13(A).

The trial court found Meiners liable as (1) a controlling person or member of a controlling group, (2) a director of Bancshares, and (3) a person on whose behalf the sale was made. Any single one of these grounds is sufficient to impose liability under the Securities Law. (Ill. Rev. Stat. 1983, ch. 121½, par. 137.13; *Gowdy v. Richter* (1974), 20 Ill. App. 3d 514, 525-26, 314 N.E.2d 549, 558.) We find Meiners liable under the Securities Law as a controlling person, and thus need not consider his liability as a director or person on whose behalf the sale was made.

■ A "controlling person" is defined as "any person selling a security, *or group of persons acting in concert in the sale of a security*, owning beneficially *** either (i) 25% or more of the outstanding voting securities of the issuer of such security where no other person owns or controls a greater percentage of such securities." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 121½, par. 137.2—4.

■ Meiners is liable as a controlling person in that he was part of a group of persons acting in concert in the illegal sale of the debentures. Both James and Meiners voted in favor of the motion to issue debentures, and they discussed the sale of debentures. The court found Meiners was aware of James selling the debenture notes to outsiders, and knew or should have known they were sold in violation of the Securities Law.

In *Froehlich v. Matz* (1981), 93 Ill. App. 3d 398, 417 N.E.2d 183, Froehlich, a shareholder, was liable as a controlling person because he participated in the decision to sell securities. Securities had been sold to Froehlich in violation of the Securities Law and, to recoup his investment, he in turn sold the securities to others in violation of the Securities Law. The court imposed liability on Froehlich because he participated and concurred with the decision to sell the securities. While Froehlich had no specific knowledge of who was solicited to buy stock, and did not personally solicit them, he was liable "because of his action in concert with the other early investors in the decision to actively seek new investors." *Froehlich*, 93 Ill. App. 3d at 411, 417 N.E.2d at 193.

In *Froehlich*, Dr. Matz was held not liable under the Securities Law, because the court found he was not a member of the controlling group that sold securities illegally to Froehlich in the first place. The court distinguished the findings of no liability with regard to Dr. Matz

because there was no showing Dr. Matz acted in concert with the others in the sale of securities, *i.e.*, he took no part in the decision to sell securities, nor in the sales themselves. *Froehlich*, 93 Ill. App. 3d at 406, 417 N.E.2d at 190.

Thus, the court correctly found Meiners liable as a "controlling person" because he acted in concert with James to sell securities while owning in excess of 25% of the outstanding shares of Bancshares. Meiners voted with James to issue and sell the debentures. For Meiners to be liable as a controlling person, it is not necessary that he personally solicit plaintiffs to buy the debentures. He approved the sale, and acted in concert with James, who did personally solicit the sales, thus making him part of the controlling group under the Securities Law.

■ Meiners also challenges the award of attorney fees against him in the amount of one-third of plaintiffs' recovery. Section 13(A) of the Securities Law provides that a purchaser of illegal securities may recover "reasonable fees *** incurred in any action brought for recovery of the amounts recoverable [under the Securities Law]." (Ill. Rev. Stat. 1983, ch. 121½, par. 137.13(A).) The goals of the fee-shifting provision of the Securities Law are to (1) penalize defendants for illegal acts, and (2) remove the expense of legal representation as an obstacle to plaintiffs bringing suit. (*Julian v. Bacon, Whipple* (N.D. Ill. 1989), 713 F. Supp. 260.) The court heard testimony of two expert witnesses, stating that an award based on an hourly rate and the contingent-fee award were both reasonable. In awarding the contingent fee to plaintiffs, the court relied on the expert witness testimony that the contingent fee was reasonable and also on the amount of time plaintiffs' attorneys spent on the case.

■ ■ The factors a court should consider when determining the reasonable value of legal services are (1) the skill and standing of the attorney employed; (2) the nature of the cause and the novelty and difficulty of the questions at issue; (3) the amount and importance of the subject matter; (4) the degree of responsibility involved in management of the cause; (5) the time and labor required; (6) the usual customary charges in the community; and (7) the benefits resulting to the client. (*Simon v. Auler* (1987), 155 Ill. App. 3d 1000, 1004, 508 N.E.2d 1102, 1104.) A court's award of attorney fees should not be disturbed on appeal absent an abuse of discretion. (*In re Estate of Healy* (1985), 137 Ill. App. 3d 406, 411, 484 N.E.2d 890, 894.) Plaintiffs' attorney presented evidence to support his fee award based on these factors, including his testimony on the amount of hours he spent on the case, as well as expert testimony on the difficulty or novelty of

the case, taking into account plaintiffs' attorney's expertise, and the usual or customary fee in the community on a case with the recovery that was won here. The trial court also considered as a factor in determining a reasonable fee that plaintiffs had entered into a one-third contingent-fee agreement with their attorney.

We find consideration of the parties' fee agreement entirely proper when determining reasonable attorney fees. We strongly emphasize that a party's fee agreement is simply one factor the court may consider, and clearly is not binding on the court, even though it is binding on the party. In the instant case, the court properly considered plaintiffs' fee agreement with their attorney, in addition to the other factors described above. The touchstone in an award of attorney fees is reasonableness, and in this case, the court found a fee in the amount of one-third of plaintiffs' recovery to be reasonable, based on consideration of many factors, including plaintiffs' contingent-fee agreement. Thus, we do not find the award of attorney fees in this case to be an abuse of discretion.

The judgment and award of the circuit court of McLean County is affirmed.

Affirmed.

GREEN and STEIGMANN, JJ., concur.