LEON R. MENTZER, d/b/a JRAMB and Associates, Plaintiff-Appellant, v. JAMES DUDLEY, Defendant-Appellee.

Fourth District   No. 4—92—0216

Opinion filed October 30, 1992.

James R. Glenn, of Glenn & Logue, of Mattoon, for appellant.

Dale A. Cini, of Ryan, Cini, Bennett & Radloff, of Mattoon, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

This appeal is from a judgment against plaintiff Leon R. Mentzer, d/b/a JRAMB & Associates, in a small claims case brought in the circuit court of Coles County against defendant James Dudley. The complaint was filed on November 25, 1991. After an evidentiary hearing at bench, the court entered an order on February 5, 1992, finding plaintiff not entitled to recovery and finding defendant entitled to damages as a sanction pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137) for vexatious filing of the complaint. After a further hearing, the court entered an order on March 3, 1992, awarding defendant $5,004.49. Plaintiff has appealed, taking issue only with the imposition of the sanction. We affirm.

In pertinent part, Supreme Court Rule 137 states:

"The signature of an attorney or *party* constitutes a *certificate by him* that he has read the pleading, motion or other paper; that to the *best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and* that it is *not interposed for any improper purpose, such as to harass* or to cause unnecessary delay or needless increase in the cost

of litigation. *** If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, *an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading,* motion or *other paper, including a reasonable attorney fee.* All proceedings under this rule shall be within and part of the civil action in which the pleading, motion or other paper referred to has been filed ***." (Emphasis added.) 134 Ill. 2d R. 137.

On appeal, plaintiff maintains (1) Supreme Court Rule 137 should not be strictly applied to *pro se* litigants in small claims cases; (2) his complaint here was well grounded in fact and warranted by existing law; and (3) the amount of the award imposed as a sanction was excessive. While we agree that Supreme Court Rule 137 sanctions should not be applied with the same force in a small claims case where, as here, the matter in controversy is less than $1,000, the sanctions were properly applied in this case. The complaint was not well grounded in fact or warranted by existing law, and plaintiff sought to harass defendant. Under the gross circumstances of this case, the award was not excessive.

Plaintiff's complaint alleged that defendant was "indebted to the plaintiff in the sum of $782.82 plus for late fees, back rent, (damages, service fees and court costs)," and upon demand, had refused to pay the same. The testimony at the hearing on the merits is shown by a bystander's bill approved by the court (134 Ill. 2d R. 323(c)) as being substantially correct. Plaintiff proceeded *pro se* at that time, and the record does not give a clear picture as to the dispute. However, the parties, through their briefs, agree upon certain facts as follows: (1) defendant was the basketball coach at Lake Land College of Mattoon; (2) plaintiff rented apartments; and (3) arrangements were made for plaintiff to rent an apartment to four prospective Lake Land players for the summer of 1991.

The bystander's bill shows indisputably that (1) the prospective players did use the apartment for the extended period; (2) on June 1, 1991, defendant made out a check for $100 on his own account and left it with plaintiff's secretary as a security deposit to hold the property for the prospective players; (3) defendant did not negotiate for the lease and never had any contact with plaintiff before a phone call from plaintiff on June 7, 1991; (4) defendant's understanding was that the check would be returned when the students moved in, but plaintiff

cashed the check; (5) defendant did help the prospective players in seeking to learn the basis for a claim by plaintiff that the prospective players had damaged the apartment; (6) the prospective players each signed lease forms for the premises; and (7) payments of $1,410 were made by Lake Land College from Pell Grant funds and booster club funds for the rent on the premises. Other evidence will be related in regard to the particular issues it involves.

■ We are unaware of any decision of a court of review in regard to whether Supreme Court Rule 137 sanctions can be properly imposed in a small claims case. However, various supreme court rules do speak to situations where the procedure involved differs from that in other cases. Supreme Court Rule 282(a) (134 Ill. 2d R. 282(a)) sets forth a special way to commence a small claims proceeding. Supreme Court Rule 286 (134 Ill. 2d R. 286(a)) makes the filing of an answer unnecessary in such a proceeding unless ordered by the court. More significantly, Supreme Court Rule 287 (134 Ill. 2d R. 287(a)) prohibits depositions or other discovery devices in such matters. The express statements of the supreme court in regard to those differences between procedures in small claims and those in other civil proceedings indicate the supreme court does not intend to absolutely preclude application of Supreme Court Rule 137 and its sanctions from small claims cases.

Supreme Court Rule 286(b) does provide for informal procedures in cases where the amount claimed does not exceed $1,000. (134 Ill. 2d R. 286(b); see *Bouhl v. Gross* (1985), 133 Ill. App. 3d 6, 478 N.E.2d 620.) Accordingly, in such cases a litigant, particularly a *pro se* litigant, should be granted more leeway in misstatements or inaccuracies of pleading, proof, or legal interpretation than in other cases.

Plaintiff's theory that his complaint was well grounded in fact and supported by existing law was based on the theory that defendant was liable as an undisclosed or partly undisclosed agent of the prospective players. Neither plaintiff nor his secretary testified to any negotiations carried on by defendant as to terms of the lease or as to price, and defendant denied that he did so. The mere fact that defendant wrote a check for security gives no inference that he was the person who originally negotiated the lease on behalf of the prospective players. Neither does defendant's later aid to the players in seeking information as to damages to the leasehold. If defendant had engaged in these negotiations, plaintiff, his secretary or someone working for plaintiff should have known of this and been able to so testify.

The record gives no indication that anyone other than prospective basketball players would be the tenants in the apartment. Thus, any-

one negotiating for the lease on behalf of those tenants would be an agent for a partially disclosed principal. (See *Lake Shore Management Co. v. Blum* (1968), 92 Ill. App. 2d 47, 51-52, 235 N.E.2d 366, 368.) Considering the manner in which plaintiff handled his case, any good-faith belief on his part that defendant was liable on such a sophisticated rule of law was extremely remote. Rather, the record indicates that plaintiff became frustrated upon his failure to collect from the tenants all of the rent due and all he deemed he was entitled to receive for damage to the premises, and proceeded maliciously.

On September 11, 1991, plaintiff sent a statement of account to defendant and two Lake Land College officials setting forth what plaintiff deemed to be the amount owed by the tenants. On October 24, 1991, plaintiff, using a false name and purporting to be his business manager, wrote to the same persons again stating the amount claimed due and threatening legal action. On October 24, 1991, plaintiff sent a letter to the same people reciting that nothing had been paid on the bill, and that the three tenants had not responded to previous letters. The letter indicated that the college was involved in a coming referendum vote and threatened to expose the college administration concerning the manner in which the bill had been handled. Plaintiff admitted at the first hearing that he lied in that letter that he had issued a check for certain repairs to the apartment. The document stated that the sender was not demanding that Lake Land staff pay the bill but asked for their assistance in collecting it. On November 14, 1991, a letter was written to the governing board of the college requesting payment and threatening to sue the tenants and defendant if payment was not made.

The foregoing correspondence supports the circuit court's finding that plaintiff's bringing of the suit against defendant was harassing. The threats of exposure of defendant and the college to ridicule also support the amount of the sanction award granted defendant. Further evidence of harassment of defendant by plaintiff was presented at the hearing to determine the amount of the sanction when defendant's counsel testified that (1) plaintiff had taken information to the national governing body for junior college athletes charging defendant with a violation of its code of conduct by virtue of his issuance of the $100 check, and (2) this had generated considerable unfavorable publicity about defendant in area newspapers. This testimony was not disputed.

The $5,004.49 award was based primarily upon the claims for fees. One was for fees of defendant's counsel, Dale A. Cini, for 47.1 hours of work at $85 per hour and one-half day of trial at $950, total-

ing $4,478.50. The other was an expert witness fee for William A. Sunderman, an attorney who testified as an expert as to the propriety of Cini's fee request. His approved charge was $460.70. This covered 3.42 hours of earlier preparation and 2 hours for preparation and attendance on the day of hearing, all at $85 per hour.

■■ No serious question of the propriety of the rate of the hourly fees charged or of the hours spent is made. Rather, plaintiff maintains that spending $4,478.50, in addition to a few small amounts for other items, to defend a $782.82 claim is ridiculous. Under most circumstances, we would agree. We recognize that, ordinarily, the amount of the subject matter of the suit is a very important factor, but the importance of the subject matter is also highly significant. (*Jacobs v. James* (1991), 215 Ill. App. 3d 499, 505, 574 N.E.2d 1292, 1296.) This was an unusual case. We can give a *pro se* small claims litigant some leeway in presenting a claim which appears unreasonable, but when such a claimant engages in the harassment involved here, he must suffer the consequences. Ordinarily, a person would be expected to hire a lawyer of lesser caliber than Cini and one whose time was less valuable to defend a matter of this nature. However, because of the collateral consequences of plaintiff's conduct, defendant was justified in incurring the fee involved here.

The portion of the award which was for Sunderman's preparation and testimony was very high for a small claims case. However, defendant was required to pay him a reasonable sum for his testimony and charging plaintiff for that is a proper function of a sanction award. Sunderman's time was valuable, and time was involved in preparation and testifying. Defendant asked plaintiff to stipulate as to Cini's fees but, because of the amount involved and the nature of the proceedings, plaintiff cannot be faulted for refusing to do so. Nevertheless, plaintiff's vexatious conduct brought about the need for Sunderman's testimony. The court did not breach its discretion in awarding ample sums to pay Sunderman at a normal rate for his time.

As we have indicated, we affirm.

Affirmed.

STEIGMANN and COOK, JJ., concur.