# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Kane*, 2016 IL App (2d) 150774

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF GREGORY PHILLIP KANE, Petitioner-Appellee, and HEATHER ANN KANE, Respondent-Appellee (Michael D. Canulli, Appellant). |
| District & No. | Second Division<br>Docket No. 2-15-0774 |
| Filed<br>Rehearing denied | December 29, 2016<br>March 28, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 14-D-1199; the Hon. Linda E. Davenport, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael D. Canulli, of Naperville, appellant *pro se*.<br><br>Natalie M. Stec, of Wolfe & Stec, Ltd., of Woodridge, for appellee Gregory Kane.<br><br>Amy L. Jonaitis and James M. Quigley, of Beerman Pritikin Mirabelli Swerdlove LLP, of Chicago, for other appellee. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion.<br>Justices McLaren and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1     This dispute concerns fees sought by attorney Michael D. Canulli, who represented petitioner, Gregory Phillip Kane, during a portion of his dissolution-of-marriage proceeding. Upon withdrawing as counsel, Canulli filed against Gregory a petition for setting final fees and costs pursuant to section 508(c) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508(c) (West 2014)), and against respondent, Heather Ann Kane, a petition for contribution pursuant to section 503(j) of the Act (750 ILCS 5/503(j) (West 2014)). In both petitions, Canulli sought an award of approximately $48,000, which was in addition to the $37,500 that he had already been paid. Following a full evidentiary hearing, the trial court denied Canulli's request for contribution from Heather, but awarded Canulli $12,500 on his petition against Gregory. Because the trial court's rulings on the petitions were not an abuse of discretion, we affirm.

¶ 2                                   I. BACKGROUND

¶ 3     Gregory and Heather were married in 1995 and have two minor children. In June 2014, Gregory filed a *pro se* petition for dissolution of marriage. He thereafter retained Canulli on July 1, 2014. Canulli and Gregory's written engagement agreement provided that, if Gregory had an objection regarding any of Canulli's billing statements, he would notify Canulli in writing within seven days of receiving the statement; otherwise, the objection would be considered waived. Canulli filed his appearance on behalf of Gregory on July 23, 2014. On September 23, 2014, the trial court entered an order awarding Canulli $37,500 in interim attorney fees, by way of a qualified domestic relations order that partially liquidated Heather's retirement account. Canulli's billing records indicated that from July 1, 2014, through September 23, 2014, he billed Gregory approximately $35,000 in attorney fees. On January 15, 2015, Canulli filed a second petition for interim fees, seeking an additional $72,000. According to the petition, said sum would satisfy his then-unpaid fees of $37,000 and provide an additional retainer of $35,000.

¶ 4     On February 4, 2015, Canulli sent Gregory an email, stating that his balance due was nearly $43,000, that he would be willing to stay on the case if Gregory and Heather entered an agreed order to each receive $200,000 from Heather's retirement account, and that Gregory would have to further agree to use $90,000 to pay Canulli's fees, with the surplus funds constituting an additional retainer.

¶ 5     Gregory did not agree, and on February 10, 2015, Canulli filed an emergency motion to withdraw as counsel, alleging an inability to communicate with Gregory and unpaid attorney fees. On February 13, 2015, the trial court granted Canulli's request to withdraw his appearance and also granted him leave to file fee petitions. Gregory represented himself for several weeks and then retained new counsel, who entered an appearance on April 23, 2015. Said counsel continues to represent Gregory in this appeal.

¶ 6     Within the dissolution action, on April 15, 2015, Canulli filed against Gregory a petition for setting final fees and costs pursuant to section 508(c) of the Act. Canulli also filed against Heather a petition for contribution pursuant to section 503(j) of the Act. The engagement agreement and 28 pages of itemized billing statements were among the exhibits attached to the fee petitions. In both petitions, Canulli acknowledged that he had already been paid $37,500 in fees, but he alleged that he was owed an additional $48,000.

¶ 7        On May 1, 2015, the trial court entered a judgment for dissolution of marriage, which incorporated a marital settlement agreement and a joint parenting agreement. Said judgment awarded Gregory and Heather joint legal custody of the children, awarded Heather primary residential custody of the children, established a visitation schedule, and awarded Gregory $27,000 in maintenance in gross.

¶ 8        The trial court held a day-long evidentiary hearing on Canulli's fee petitions on July 2, 2015. The court took judicial notice of the court file and admitted into evidence Canulli's 28 pages of itemized billing statements, which reflected that he had billed Gregory for 268.7 hours from July 2014 until he withdrew in February 2015. At the hearing, Canulli testified, in relevant part, as follows. He had practiced family law for 38 years. Gregory filed a number of pleadings *pro se*, which Canulli agreed was not normal or customary. The total fees incurred in Canulli's representation of Gregory were $85,529.86, of which he had been paid $37,500. Canulli thus sought the remaining balance of more than $48,000. Gregory and Heather had no ability to communicate or resolve any matters in the case, and "the case was litigious on both ends." Gregory was "unusually extraordinarily emotional" about the divorce. Gregory and Canulli exchanged emails almost every day, and sometimes more than once a day. Canulli also testified as to his billing practices that he recorded services contemporaneously when rendered and that he reviewed each bill for accuracy before mailing it to Gregory.

¶ 9        On cross-examination, Canulli was questioned regarding billing entries that opposing counsel asserted were unreasonable and unnecessary. Much of the hearing was spent going line-by-line through these entries. Canulli was questioned regarding time that he billed to review pleadings that, according to his billing statements, were filed by Heather when in fact no such pleadings had been filed. Canulli also billed for drafting motions that were not noticed or presented to the court and in some cases never filed. Canulli acknowledged that he did not prepare for trial, nor did he prepare a trial notebook, parenting agreement, or marital settlement agreement. On several days he billed more than 10 hours on Gregory's case.

¶ 10        Gregory testified as follows. He was employed by the Illinois River Winery, a corporation of which he was the sole shareholder and director and from which he drew an annual salary of $18,000. Gregory was awarded the business by way of the parties' marital settlement agreement. The corporation had recently emerged from chapter 11 bankruptcy, and Gregory operated it judgment-free. The gross receipts for the winery in 2014 were approximately $500,000, and its checking account contained approximately $3000. The winery owned the real property it was situated on, but the property was encumbered by several loans, totaling approximately $200,000. By way of the marital settlement agreement, Gregory was receiving maintenance from Heather, and he also received approximately $225,000 from Heather's retirement account. In April 2015, Gregory received $20,000 from the settlement of a personal-injury claim.

¶ 11        Heather then testified as follows. She earned approximately $134,000 per year working at the Nielsen Company, and she had received a bonus in excess of $40,000 in each of the prior three years. By way of the marital settlement agreement, Heather received the marital residence, which was valued at $355,000 but encumbered by a mortgage of $208,000 and a home-equity line of credit that exceeded $200,000, both of which were solely Heather's responsibility. The marital residence was "under water." After the payment of her legal fees and a distribution to Gregory pursuant to the marital settlement agreement, her retirement account was worth approximately $200,000. Also pursuant to the marital settlement

agreement, Heather was responsible for $43,000 of credit card debt incurred by the parties during the marriage. Heather paid tuition for the younger child to go to private school. She was paying maintenance to Gregory, and she was not receiving child support from him.

¶ 12 At the conclusion of the hearing, the court first observed that the parties stipulated to the reasonableness of Canulli's $304 hourly rate, which included a $9 administrative fee. In ruling on the reasonableness of Canulli's fees, the court found that "the majority of the work that was done was not necessary nor [*sic*] reasonable." The court agreed that Gregory was a "difficult" client who "contacted [Canulli] a lot," but it stated that Canulli encouraged Gregory's "rogue behavior" by fostering, tolerating, and aiding him in filing *pro se* petitions, "which did nothing to control the litigation" and allowed Gregory to take "unreasonable positions." The court noted that only two hearings were held while Canulli was on the case and that no depositions were taken. The court stated that Canulli's billing statements, though very detailed, were "absolutely form over content at some point because [there were] no substantive things being done in the case." The court denied Canulli's request for contribution from Heather, but it found that he was entitled to a total of $50,000 from Gregory for his work on the case. As Canulli had already been paid $37,500, the court awarded Canulli $12,500, to be paid by Gregory.

¶ 13 II. ANALYSIS

¶ 14 Before addressing the merits of the appeal, we must first address our own jurisdiction. We previously dismissed this appeal pursuant to *In re Marriage of Knoerr*, 377 Ill. App. 3d 1042 (2007). Though no party had raised the issue, we discovered that a contempt petition filed by Gregory remained pending in the trial court when Canulli filed his notice of appeal on July 31, 2015. As the appealed order lacked a finding, pursuant to Illinois Supreme Court Rule 304(a) (eff. Jan. 1, 2015), that there was no just reason for delaying either enforcement or appeal or both, we dismissed the appeal as premature. In the dismissal order, we commented that Illinois Supreme Court Rule 303(a)(2) (eff. Jan. 1, 2015) could potentially allow Canulli to establish the effectiveness of his July 31, 2015, notice of appeal. Reiterating the procedure set forth in *Knoerr*, we stated that, "if the trial court has already disposed of the [contempt] petition *** and all other subsequently filed claims, if any, Canulli may file a petition for rehearing and to supplement the record with the appropriate orders to establish our jurisdiction over this appeal."

¶ 15 Canulli timely filed a petition for rehearing and supplemented the record with several filings and trial court orders. Included in the supplemental record is an order entered on September 14, 2015, that disposed of the contempt petition. Said order also disposed of a motion for sanctions that Heather had apparently filed, and the order indicated that the case would be taken "off call." Though an additional motion appears in the supplemental record, it was filed more than 30 days after the entry of the September 14, 2015, order, and it was disposed of on April 12, 2016. Thus, based on our review of the supplemental record, all matters in the trial court appear resolved.

¶ 16 Pursuant to Illinois Supreme Court Rule 367(d) (eff. Mar. 8, 2016), we ordered Gregory and Heather to respond to the petition for rehearing, and they make similar arguments in opposition to it. Though they acknowledge that the contempt petition was resolved on September 14, 2015, they assert that we still lack jurisdiction because Canulli did not file a new or amended notice of appeal within 30 days of that date. They also argue that Rule 303(a)(2)

- 4 -

cannot be used to establish the effectiveness of the July 31, 2015, notice of appeal because, as a "condition precedent" for the rule to apply, a timely postjudgment motion must have been filed in the trial court. Rule 303(a)(2) provides, in pertinent part, as follows:

> "When a timely postjudgment motion has been filed by any party, *** a notice of appeal filed before the entry of the order disposing of the last pending postjudgment motion, or before the final disposition of any separate claim, becomes effective when the order disposing of said motion or claim is entered." Ill. S. Ct. R. 303(a)(2) (eff. Jan. 1, 2015).

Gregory and Heather stress that Gregory's contempt petition was not a postjudgment motion because it did not request at least one of the forms of relief contained in section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2014)), namely, rehearing, retrial, modification of the judgment, vacation of the judgment, or other relief directed against the judgment.

¶ 17   Though we agree that a postjudgment motion was not filed in this case, the absence of such a motion does not preclude Rule 303(a)(2) from "saving" a premature notice of appeal where the notice was filed before the final disposition of any separate claim that is later resolved. Indeed, this court has long interpreted Rule 303(a)(2) to allow the effectuation of a notice of appeal upon the resolution of a pending claim—even in the absence of a postjudgment motion. See, *e.g.*, *McMackin v. Weberpal Roofing, Inc.*, 2011 IL App (2d) 100461; *People ex rel. Madigan v. Illinois Commerce Comm'n*, 407 Ill. App. 3d 207 (2010); *Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.*, 388 Ill. App. 3d 81 (2009); *Knoerr*, 377 Ill. App. 3d 1042; *In re Marriage of Valkiunas*, 389 Ill. App. 3d 965 (2008).

¶ 18   In *Valkiunas*, we rejected an argument similar to the one that Gregory and Heather now advance. There, the petitioner appealed orders that were entered on February 8, 2008, and March 3, 2008—neither of which contained a Rule 304(a) finding. We initially dismissed the appeal pursuant to *Knoerr* because, when the petitioner filed her notice of appeal, two civil contempt petitions remained pending in the trial court. *Valkiunas*, 389 Ill. App. 3d at 966. Following the procedure set out in *Knoerr*, the petitioner thereafter filed a petition for rehearing and supplemented the record with an order entered on June 24, 2008, that disposed of both contempt petitions. However, the supplemented materials also reflected that, on May 14, 2008 (after the notice of appeal was filed), the respondent filed a motion to disqualify the petitioner's attorney, and the motion remained pending as of the June 24, 2008, order. The petitioner contended that her notice of appeal became effective when the contempt petitions were resolved, despite the pendency of the motion. She further argued that the motion to disqualify her attorney was not a postjudgment motion. *Id.* at 968.

¶ 19   In interpreting Rule 303(a)(2), we noted that there is "nothing magical about the date the notice of appeal was actually filed, and the plain meaning of the rule is that the notice of appeal 'becomes' effective on the date the impediment to our jurisdiction is removed." *Id.* We held that, although one jurisdictional impediment was removed on June 24, 2008, the pendency of the motion to disqualify impeded our jurisdiction such that the notice of appeal was still premature. *Id.* In so ruling, we rejected the petitioner's argument—that Rule 303(a)(2) did not apply because the motion to disqualify is not a postjudgment motion—because it ignored the possibility that the motion was a separate claim under Rule 303(a)(2). We also noted that a "pending claim" under Rule 303(a)(2) is the same as a "claim" under Rule 304(a), meaning

any "right, liability or matter raised" in an action, and that the motion to disqualify was a pending "matter" raised in the action. *Id.*

¶ 20    Based on our practice of interpreting Rule 303(a)(2) to allow the effectuation of a notice of appeal upon the resolution of a pending claim, and especially in light of *Valkiunas*, we reject Gregory's and Heather's argument that Rule 303(a)(2) is inapplicable, and we find that the notice of appeal became effective on September 14, 2015—when the contempt petition was resolved. As a result, we have jurisdiction over this appeal, and we accordingly grant the petition for rehearing.

¶ 21    We now turn to the merits of the appeal. Section 508(c) of the Act sets forth the rules for a final hearing for a trial court's determination of attorney fees and costs against the attorney's own client after the attorney has withdrawn. The statute provides, in relevant part, as follows:

> "(3) The determination of reasonable attorney's fees and costs *** is within the sound discretion of the trial court. The court shall first consider the written engagement agreement and, if the court finds that the former client and the filing counsel, pursuant to their written engagement agreement, entered into a contract which meets applicable requirements of court rules and addresses all material terms, then the contract shall be enforceable in accordance with its terms, subject to the further requirements of this subdivision (c)(3). Before ordering enforcement, however, the court shall consider the performance pursuant to the contract. Any amount awarded by the court must be found to be fair compensation for the services, pursuant to the contract, that the court finds were reasonable and necessary." 750 ILCS 5/508(c)(3) (West 2014).

¶ 22    Section 503(j) of the Act addresses contribution from an opposing party toward attorney fees and costs before a final dissolution-of-marriage judgment is entered. 750 ILCS 5/503(j) (West 2014). Ordinarily, the primary obligation for the payment of attorney fees rests on the party on whose behalf the services were rendered. *In re Marriage of Hassiepen*, 269 Ill. App. 3d 559, 569 (1995); *In re Marriage of Mantei*, 222 Ill. App. 3d 933, 941 (1991). However, section 503(j) allows the trial court to order one party to contribute to the other party's attorney fees. 750 ILCS 5/503(j) (West 2014). Unlike section 508(c) of the Act, section 503(j) does not expressly require that the amount awarded be "reasonable." Nevertheless, the statute has been interpreted to incorporate a reasonability requirement. *In re Marriage of Hasabnis*, 322 Ill. App. 3d 582, 596 (2001).

¶ 23    It is worth noting that, pursuant to section 503(j), Canulli's request for contribution should have been heard and decided prior to entry of the judgment for dissolution of marriage. Nevertheless, it appears that no party raised the issue in the trial court, and any objection is thus forfeited. The timing provisions of section 503(j), although mandatory, are not jurisdictional prerequisites, and they therefore may be forfeited. *In re Marriage of Cozzi-DiGiovanni*, 2014 IL App (1st) 130109, ¶ 40; *In re Marriage of Lindsey-Robinson*, 331 Ill. App. 3d 261, 269 (2002).

¶ 24    In his brief, Canulli argues various theories as to which standard of review we should apply to this case, and he seemingly advocates for a number of standards that span the spectrum from *de novo* to abuse of discretion. However, when an appeal concerns an award of attorney fees, we review it for an abuse of discretion. *In re Marriage of Harrison*, 388 Ill. App. 3d 115, 120 (2009); *Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590, 595 (2000). All reasonable presumptions are in favor of the action of the trial court, and, absent an affirmative

showing to the contrary, the reviewing court will assume that the trial court understood and applied the law correctly. *In re Marriage of Walters*, 238 Ill. App. 3d 1086, 1102-03 (1992).

¶ 25    It is well established that the burden of proof is on the attorney to establish the value of his services, and that appropriate fees consist of reasonable charges for reasonable services. *In re Marriage of Shinn*, 313 Ill. App. 3d 317, 323 (2000). In order to justify the fees sought, the attorney must present more than a mere compilation of hours multiplied by a fixed hourly rate. *In re Marriage of Angiuli*, 134 Ill. App. 3d 417, 423 (1985). Rather, the attorney must provide sufficiently detailed time records that were maintained throughout the proceeding, and those records must specify the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged. *Shinn*, 313 Ill. App. 3d at 323. The trial court should consider a variety of additional factors when assessing the reasonableness of fees, such as the skill and standing of the attorney, the nature of the case, the novelty and/or difficulty of the issues involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for similar work, the benefit to the client, and whether there is a reasonable connection between the fees requested and the amount involved in the litigation. *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 984 (1987). The trial court should scrutinize the records for their reasonableness in the context of the case. *McHugh v. Olsen*, 189 Ill. App. 3d 508, 514 (1989). In ruling on the reasonableness of fees, the trial judge may also rely on his or her own experience. *Richardson v. Haddon*, 375 Ill. App. 3d 312, 315 (2007); *Heller Financial, Inc. v. Johns-Byrne Co.*, 264 Ill. App. 3d 681, 691 (1994). When a trial court awards less than the amount requested in a fee petition, the court's ruling should include the reasons justifying a particular reduction. *Richardson*, 375 Ill. App. 3d at 315.

¶ 26    Canulli asserts that the trial court's award of attorney fees was erroneous for a number of reasons. Though they appear in multiple sections of his brief, many of his arguments are but one argument phrased in varying ways. We also observe that a number of paragraphs are repeated verbatim in two sections of his brief. Canulli's main contention on appeal is that, when the trial court ruled on his fee petitions, it was required to (1) review each billing entry line-by-line; (2) state with specificity which line items it found unreasonable; and (3) provide a specific explanation to support each individual reduction. For these propositions, he relies heavily on *Fitzgerald v. Lake Shore Animal Hospital, Inc.*, 183 Ill. App. 3d 655 (1989).

¶ 27    *Fitzgerald* involved an action to recover possession of commercial property that was leased to the defendant, and the sole dispute concerned when the defendant would vacate the premises. The trial court granted summary judgment in favor of the plaintiff, who then sought attorney fees pursuant to a fee-shifting provision contained in the lease. *Id.* at 658-59. The plaintiff sought fees of approximately $50,000, but the trial judge awarded $25,000, and the judge commented that the amount was "as probably a wild a guess [as he could] take." *Id.* at 661. On review, the appellate court found that the award was unreasonably high and remanded the matter for a hearing on the fees. *Id.* at 662. In so holding, the court commented that the trial judge "did not make clear what billings he was striking as duplicitous or unnecessary," but rather took a "Solomonic" approach when he "clove the baby in two." *Id.* The court stated that "[w]ithout a full, complete and detailed hearing on this matter, and without a ruling on each billing entry, *** there can be no way of determining what a reasonable fee might be in this case." *Id.* The court indicated that the case was not complicated, and it stated that "the usual and customary charge for a simple eviction case surely must be far less than the fee that was awarded here, to say nothing of the one demanded." *Id.*

¶ 28    We find *Fitzgerald* distinguishable. In *Fitzgerald*, when the trial court simply halved the fees requested in the fee petition, it did so without the benefit of a full evidentiary hearing and it candidly characterized the award as a "wild guess." *Id.* at 661; see also *Heller Financial, Inc. v. Johns-Byrne Co.*, 264 Ill. App. 3d 681, 693 (1994). In the instant matter, the report of proceedings makes clear that the parties engaged in an exhaustive hearing wherein Canulli's itemized billing statements were scrutinized by Gregory and Heather, as well as the trial court. The sole subject of the hearing was Canulli's request for fees, and indeed the trial court devoted an entire day to the consideration thereof. Here, nothing suggests that the trial court took a "wild guess" or acted arbitrarily when it awarded Canulli an additional $12,500 in fees from Gregory. Further, the court did not take a "Solomonic" approach and simply halve the requested fees. The report of proceedings demonstrates that the court was engaged, asked numerous pointed questions, and gave due consideration to the fee petitions, as well as the billing statements attached thereto.

¶ 29    It should also be noted that, despite Canulli's assertion, *Fitzgerald* does not require the trial court to review the attorney's billing entries line-by-line and affirmatively strike those individual entries that it deems unreasonable, nor does *Fitzgerald* require the court to provide a "specific explanation supporting each reduction." No court has cited *Fitzgerald* for such propositions, and we decline to do so now. Though the *Fitzgerald* court remanded the matter for a "ruling on each billing entry," it is clear that the court directed the trial court to make such evaluations and rulings in light of the particular facts of that case.

¶ 30    In addition to *Fitzgerald*, Canulli cites a number of cases to support his "itemization" argument. He prefaces this list of cases with the introductory signal "*see*," which should be used only when an authority clearly and directly supports the proposition for which it is cited. *People v. Gonzalez*, 292 Ill. App. 3d 280, 287 (1997). Simply put, none of the additional cases requires the trial court to review each individual billing entry line-by-line before striking any as unreasonable. *Patton v. Lee*, 406 Ill. App. 3d 195 (2010), concerned a request for sanctions under section 226 of the Illinois Domestic Violence Act of 1986 (750 ILCS 60/226 (West 2008)), based on allegedly false statements made in an emergency petition for an order of protection. There, we affirmed the trial court's denial of sanctions, because, among several other reasons, the party seeking the sanctions did not itemize the costs that he believed were caused by the false statements. *Id.* at 201. *In re Marriage of Heindl*, 2014 IL App (2d) 130198, concerned the trial court's denial of interim attorney fees. We held that the trial court did not abuse its discretion in denying interim fees where the petitions were not verified and did not include any affidavits or other support for the request. *Id.* ¶¶ 32-33. Canulli also cites *Cholipski v. Bovis Lend Lease, Inc.*, 2014 IL App (1st) 132842, but notably absent from that case is any discussion of attorney fees. Finally, he cites *McHenry Savings Bank v. Autoworks of Wauconda*, 399 Ill. App. 3d 104 (2010), which involved the amount of fees a bank was entitled to collect from a guarantor of a promissory note that was in default. At the conclusion of the trial, the bank filed a verified petition for attorney fees, detailing the services performed and the time spent by each of the seven attorneys who represented the bank. *Id.* at 108. We held that the trial court did not abuse its discretion in reducing from 58 to 30 the compensable hours the bank spent preparing and trying the case. Though the bank offered an argument similar to that now advanced by Canulli regarding itemization, we did not reach the issue because the trial court offered a reasonable explanation for reducing the fees. *Id.* at 119. Thus, these cases do not support Canulli's itemization argument.

¶ 31    Canulli insists that, because attorneys must provide sufficiently detailed time records when seeking fees, "in fairness" the trial court should have a corresponding duty to detail the specific entries that it finds unreasonable. Although it is well established that the absence of specificity with regard to task and time precludes a finding of reasonableness by the trial court (*In re Marriage of Broday*, 256 Ill. App. 3d 699, 707 (1993)), we reject Canulli's implicit assertion that the *presence* of specificity in an attorney's billing records therefore mandates a line-by-line finding of reasonableness (or unreasonableness) by the trial court. The purpose of requiring such specificity by the attorney is to aid the trial court in its efforts to determine a reasonable fee award (*In re Estate of Bitoy*, 395 Ill. App. 3d 262, 275 (2009)), and those efforts would not be aided by requiring of the trial court the same degree of specificity, Canulli's fairness argument aside. While reviewing courts have commented favorably where trial courts did undertake a line-by-line review (see *Kaiser*, 164 Ill. App. 3d at 988), there is simply no requirement for trial courts to do so. Further, reviewing courts have upheld trial courts' valuations of work performed by attorneys in terms of rounded numbers. See, *e.g.*, *In re Marriage of Auriemma*, 271 Ill. App. 3d 68 (1994) (finding that law firm was entitled to receive a total of $90,000 in fees, rather than the $155,987.76 it sought, due to the firm's failure in its obligation to control the litigiousness of its client); *400 Condominium Ass'n v. Wright*, 240 Ill. App. 3d 546 (1992) (upholding award of $8000 in fees when petition sought $24,164.21); *Angiuli*, 134 Ill. App. 3d 417 (upholding trial court's decision to reduce fees sought by attorney against former client from $62,202.25 to $36,000).

¶ 32    Canulli next asserts that Gregory waived his right to object to the fees because he did not object to any bill within seven days of receiving it, as required by the engagement agreement. Based on this provision, and prior to the hearing on his fee petitions, Canulli filed a motion *in limine* to bar Gregory from opposing his fee petitions. The trial court denied the motion and proceeded to a full hearing on the petitions. Canulli cites no authority in support of his waiver argument, and so the argument is forfeited. "The appellate court is not a depository into which a party may dump the burden of research." (Internal quotation marks omitted.) *Hall v. Naper Gold Hospitality, LLC*, 2012 IL App (2d) 111151, ¶ 13.

¶ 33    Next, Canulli contends that the court abused its discretion by not applying the "required criteria and factors" when it reduced his fees. This argument consists almost entirely of material quoted from *Goesel v. Boley International (H.K.) Ltd.*, 806 F.3d 414 (7th Cir. 2015). In *Goesel*, a law firm represented a minor and his parents in a personal-injury suit. *Id.* at 417. The parties entered into a retainer agreement whereby the firm would receive one-third of any gross amount recovered and the Goesels would be responsible for any litigation expenses. If there was no recovery, they would owe no attorney fees. *Id.* The case settled prior to trial, and, after paying the litigation expenses, the Goesels would be left with 42% of the total recovery. Because the injured party was a minor, the trial court was required to approve the settlement before it could be finalized. The court, *sua sponte*, objected to the contingent fee agreement, invoked " 'fairness and right reason,' " and "modified the fee structure so that the litigation expenses were deducted off the top, prior to the one-third allocation to the law firm." *Id.* at 418.

¶ 34    On appeal, the Seventh Circuit undertook a review of the objective reasonableness of the retainer agreement's provision for attorney fees. Looking to the factors that courts use to determine the reasonableness of fees (see *supra* ¶ 25), the court found that the firm's fees "easily passe[d] muster" and were not excessive. *Goesel*, 806 F.3d at 421. In so holding, the court stated that the trial court impermissibly relied on " 'fairness and right reason,' " which

the reviewing court described both as a "rhetorical flourish" and a factor outside the appropriate scope of its inquiry. *Id.* at 422-23. The court stated that, of the criteria that govern attorney fees in settlements involving minors, none supported rewriting the terms of the agreement. *Id.* at 422.

¶ 35    At the outset, we note that federal appellate decisions are not binding on this court. See *People v. Kidd*, 129 Ill. 2d 432, 457 (1989). While such decisions may be considered persuasive authority (*People ex rel. Ryan v. World Church of the Creator*, 198 Ill. 2d 115, 127 (2001)), we agree with Gregory and Heather that *Goesel* has little relevance to this matter. Indeed, much of the *Goesel* court's discussion concerns the "vital role" that contingent-fee contracts play in our legal system. *Goesel*, 806 F.3d at 423. Also, while the *Goesel* court took issue with the trial court's reliance on "additional factors outside the appropriate scope of its inquiry" (*id.*), Canulli does not indicate what factor or factors he believes the trial court here improperly relied on in reducing the fees. Moreover, *Goesel* does not state that a court should review "line item" billing statements when reducing fees, nor does it require a court to articulate with particularity how it evaluated each of the factors when assessing the reasonableness of the fees. Thus, *Goesel* does not bolster Canulli's arguments.

¶ 36    Our review of the record, as well as the report of proceedings concerning the hearing on Canulli's fee petitions, shows that the trial court provided numerous reasons for reducing the fees, and we believe that the trial court's award of fees was not an abuse of discretion. The court commented on the absence of progress in the case, despite the more than $85,000 in fees that Canulli billed to Gregory. The court stressed that only two hearings were held, that no depositions were taken, and that there were "no substantive things being done" in the case. Indeed, these statements were supported by Canulli's own acknowledgment that he did not prepare for trial, that no experts were consulted or retained, and that he did not prepare a joint parenting agreement or a marital settlement agreement. The record confirms that Canulli participated in only two contested hearings: the hearing on Heather's motion to vacate Gregory's *pro se* order of protection (which was granted) and the hearing on Heather's petition for exclusive possession of the marital residence (which also was granted). These observations were clearly within the court's province, as a judge is permitted to rely on his or her own knowledge and experience when determining the reasonableness of fees. *Richardson v. Haddon*, 375 Ill. App. 3d 312, 315 (2007); *In re Marriage of McHenry*, 292 Ill. App. 3d 634, 642 (1997); *In re Marriage of Sanda*, 245 Ill. App. 3d 314, 319 (1993).

¶ 37    Further, Heather correctly points out that Canulli billed for drafting documents that were either not presented or not filed with the court, including a motion to dismiss her petition for exclusive possession of the marital residence and a notice of dissipation. Canulli's billing statements also contain several entries that indicate that he charged for reviewing an emergency petition for an order of protection filed by Heather, though no such petition was ever filed. Canulli's statements also indicate that he billed Gregory for more than two hours after he was granted leave to withdraw.

¶ 38    It is well established that unnecessarily increasing the cost of litigation is a relevant factor for a trial court to consider when allocating attorney fees. *In re Marriage of Patel*, 2013 IL App (1st) 112571, ¶ 117. Moreover, an attorney's fees may be reduced if the attorney fails to control the litigiousness of his or her client. *Auriemma*, 271 Ill. App. 3d at 74. In her findings, the trial judge here clearly found these factors important, as she spoke directly to Canulli: "Yes, your client was difficult. I understand that. But you fostered, you tolerated, and you

- 10 -

actually aided him in filing *pro se* petitions, by your own testimony which, in fact, encouraged rogue behavior and did nothing to control the litigation, which, I believe, is also part of an attorney's obligation when your client is taking unreasonable positions."

¶ 39    The record indicates that Gregory filed four separate *pro se* submissions with the court while represented by Canulli, including two emergency petitions for orders of protection, a petition for temporary support, and a filing consisting of 40 pages of exhibits regarding Heather's private matters.

¶ 40    Gregory filed his first *pro se* emergency petition for an order of protection on September 15, 2014. Canulli's billing statements indicate that, the day prior, he billed Gregory for discussing "9/11 incident and Order of Protection and going forward on the same." He also emailed Gregory regarding the possibility of seeking an order of protection, stating: "FYI—I received this from opposing counsel and it does not appear from this e-mail that they intend to file a Petition for Order of Protection. *** If they do not file anything, don't you think it is necessary or in your best interests to do so? Possibly better to let things calm down and also lessen the legal fees." The trial court granted the emergency petition. Heather thereafter filed an emergency motion to rehear the petition, and a hearing was held on September 23, 2014, wherein Canulli represented Gregory. At the conclusion of the hearing, the court vacated the order of protection. Canulli's billing statements show that he charged Gregory for more than 16 hours of work related to this petition, including time spent representing Gregory at the hearing, preparing for the hearing, and exchanging phone calls and emails with Gregory and with opposing counsel. Some two weeks after the hearing, Canulli sent Gregory an email, stating "[t]ruth be told, there wasn't enough for an order of protection and I wouldn't have filed a petition based on what happened."

¶ 41    Gregory filed a second *pro se* emergency petition for an order of protection approximately three months later, and the court denied it after chastising Gregory for filing it. Though Canulli testified that he did not help Gregory prepare the petition, he acknowledged that he billed Gregory for reviewing the petition before Gregory filed it. In sum, Canulli billed for nearly four hours related to this petition.

¶ 42    Gregory also filed *pro se* approximately 40 pages of exhibits that contained personal information regarding Heather. Heather thereafter filed an emergency motion to impound the exhibits, and Canulli billed Gregory for assisting him in preparing to appear *pro se* at the hearing. Canulli testified at the hearing on his fee petitions that the emergency motion to impound was noticed for a date on which he was not available. Canulli's billing statements show that he billed Gregory for nearly six hours for addressing the matter with opposing counsel, conducting legal research, and preparing Gregory for his *pro se* court appearance. One billing entry states, "review, select, copy and highlight cases to oppose Wife's request to impound file *** and very detailed email to client about what to do and say to Judge tomorrow w/multiple attachments of highlighted cases."

¶ 43    Gregory's final *pro se* filing while Canulli represented him was a petition for temporary maintenance. The court struck the petition on January 12, 2015, ordered Gregory not to file pleadings in any other courtrooms, and granted Heather's counsel leave to file a petition for attorney fees for her time spent that day appearing in court. Canulli testified that he assisted Gregory in preparing the *pro se* petition and the notice of it.

¶ 44    "The question for the reviewing court is not whether it agrees with the trial court's decision; rather, the reviewing court must analyze whether the trial court, in the exercise of its

discretion, acted arbitrarily without conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial injustice resulted." *In re Marriage of Baniak*, 2011 IL App (1st) 092017, ¶ 9. Based on all of the foregoing, we cannot conclude that the trial court's decision to deny contribution from Heather and award Canulli a total of $50,000 from Gregory was an abuse of discretion.

¶ 45 Finally, we consider the issue of sanctions. Canulli filed a motion for sanctions under Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) against Gregory, wherein he asserts that Gregory's reply brief quotes portions of Canulli's emails out of context, thereby placing Canulli "in a bad light." Similarly, Heather has filed a motion for Rule 375(b) sanctions against Canulli, asserting that Canulli's briefs falsely state that she filed *pro se* pleadings in the trial court. We ordered both of these motions taken with the case.

¶ 46 Rule 375 permits us to impose appropriate sanctions on a party if we determine that the appeal or other action itself is frivolous or that the appeal or other action was not taken in good faith or was taken for an improper purpose, such as to harass or cause unnecessary delay. The purpose of Rule 375 is to condemn and punish the abusive conduct of litigants and their attorneys who appear before us. *Sterling Homes, Ltd. v. Rasberry*, 325 Ill. App. 3d 703, 709 (2001).

¶ 47 We conclude that sanctions would not be appropriate in this case. Gregory's mischaracterization of Canulli's emails by not quoting them in their entirety was *de minimis*, at most. As for Heather's motion, she is correct that Canulli's briefs state that both parties filed *pro se* pleadings, where the record is clear that she did not act *pro se*. Specifically, Canulli refers to Heather's emergency motion to impound as having been filed *pro se*, and he states that "the record is replete with instances where Mrs. Kane filed *pro se* motions [and] sought *pro se* relief." We decline to impose sanctions here, as Canulli's misstatements likely reflect carelessness in drafting his briefs, rather than a deliberate effort to mislead this court.

¶ 48                                                    III. CONCLUSION

¶ 49 For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 50 Affirmed.