2020 IL App (2d) 180434-U
No. 2-18-0434
Order filed February 24, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | |
|---|---|
| *In re* MARRIAGE OF MEREDITH SEELIG ) | Appeal from the Circuit Court |
| ) | of Lake County. |
| Petitioner, ) | |
| ) | |
| and ) | No. 16-D-1148 |
| ) | |
| MICHAEL SEELIG, ) | |
| ) | |
| Respondent-Appellee ) | Honorable |
| ) | D. Christopher Lombardo, |
| (Jakubs-Wigoda, LLP, Appellant). ) | Judge, Presiding. |

JUSTICE BURKE delivered the judgment of the court.
Justices Birkett and Zenoff concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court did not abuse its discretion in denying respondent's attorney more than half of the fees she requested, as the attorney billed excessive amounts for certain services, especially as the attorney-client relationship deteriorated, and the parties did not intend to make the attorney a third-party beneficiary of their marital settlement agreement.

¶ 2   The trial court dissolved the marriage of petitioner Meredith Seelig and respondent Michael Seelig, and respondent's attorneys, Jakubs-Wigoda LLP (Jakubs) petitioned for $22,097.81 in fees. Following a hearing, the court found that $10,000 was a reasonable fee for Jakubs' work. Jakubs appeals, contending that the court abused its discretion by reducing its fee and erred in failing to

enforce the parties' settlement agreement requiring each party to pay his or her own fees. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    After petitioner filed her petition for dissolution, respondent executed a retainer agreement with Jakubs. On July 13, 2016, Linda Jakubs filed her appearance on respondent's behalf.

¶ 5    An October 18, 2016, order required respondent to pay petitioner $6826.48 monthly for temporary maintenance, child support, and daycare expenses. Respondent was not in court when the order was entered. After learning of it, he complained to Jakubs that he could not afford that amount, as it represented about 95% of his net income.

¶ 6    Respondent's relationship with Jakubs continued to deteriorate and, on November 2, 2016, Jakubs moved to withdraw. The court allowed it to do so. Respondent hired new counsel who, *inter alia*, moved to reconsider the support order. Respondent argued that the amount did not follow the statutory guidelines and was based on an inflated estimate of his income, including a discretionary bonus that he was not eligible to receive for six months. In December 2016, the court modified the support order and reduced respondent's monthly payments to $3300. Jakubs petitioned for attorney fees from respondent (750 ILS 5/508(c) (West 2016)) and for a contribution to its fees from petitioner (*id.* § 503).

¶ 7    In January 2018, the court dissolved the parties' marriage. The judgment, *inter alia*, provided by agreement that "[e]ach party shall be responsible for the payment of *** the attorneys' fees and costs incurred by him or her."

¶ 8    At a hearing on the fee petitions, Linda Jakubs testified that, early in the case, respondent's primary focus was on moving out of the marital residence and removing his personal property, including what he considered to be his premarital furniture. Jakubs communicated with him seven

days a week about this issue. She prepared approximately four drafts of an agreed order allowing respondent to remove certain personal property from the house. However, petitioner's attorneys would not agree to such an order.

¶ 9    After the hearing, the trial court noted that the parties' marriage was short and it did not appear "that there really was [*sic*] anything terribly complex about this case." There had been only three court dates while Jakubs represented respondent, and there was "disagreement as to the benefit to Mr. Seelig as a result of those court dates." The court observed that "very little advancement occurred" during that time.

¶ 10    The court expressed concern about fees for certain blocks of time. On September 20, Jakubs billed seven hours for preparation for hearings having "[m]uch to do with the financial affidavits as mentioned before over and over and over again. Quite a lot of hours in a specific day." The following day, $1500 was billed for a court appearance on an emergency, and significant time was spent again the next day. The following day, another five hours was spent "reviewing and assembling and discussing and telephoning and faxing and so on."

¶ 11    The court found that the attorney-client relationship broke down after the support order. The court expressed concern that Jakubs continued to bill for time after the breakdown of the relationship despite "a miscommunication at best about that temporary support order."

¶ 12    The court found that $10,000 was a reasonable fee for the services Jakubs rendered. After crediting respondent with $8079.53 already paid, the court awarded an additional $1920.47. Jakubs timely appeals.

¶ 13                                    II. ANALYSIS

¶ 14    Jakubs first contends that the trial court abused its discretion in reducing its fees from $22,097.81 to $10,000. It argues that the court failed to provide a factual basis for the reduction,

misapplied the facts, and inappropriately considered the breakdown in the attorney-client relationship.

¶ 15    Jakubs contends that, while the court expressed some " 'concerns' " about particular billing items, it did not "quantify" its concerns or "provide any specificity" as to how it calculated fees. Citing *Fitzgerald v Lake Shore Animal Hospital, Inc.*, 183 Ill. App. 3d 655 (1989), Jakubs argues that the court took a " 'Solomonic' " approach and merely cut its fees approximately in half.

¶ 16    We review an attorney fee award for an abuse of discretion. *In re Marriage of Kane*, 2016 IL App (2d) 150774, ¶ 24.   Thus, we indulge all reasonable presumptions in favor of the trial court's ruling and, absent an affirmative showing to the contrary, we assume that the court understood and applied the law correctly. *In re Marriage of Walters*, 238 Ill. App. 3d 1086, 1102-03 (1992).

¶ 17    The burden of proof is on the attorney seeking fees to establish the value of her services. *Kane*, 2016 IL App (2d) 150774, ¶ 25.   To justify the fees sought, an attorney must present more than a mere compilation of hours multiplied by a fixed hourly rate. *Id.*   The court should consider a variety of additional factors, such as the skill and standing of the attorney, the nature of the case, the novelty and difficulty of the issues, the importance of the matter, the degree of responsibility required, the usual and customary charges for similar work, the benefit to the client, and whether there is a reasonable connection between the fees requested and the amount involved in the litigation. *Id.*   The judge may rely on his or her own experience. *Id.*   When a trial court awards less than the amount requested in a fee petition, the court's ruling should include the reasons justifying a particular reduction. *Id.*

¶ 18    In *Kane*, the court held that a trial court need not "review the attorney's billing entries line-by-line and affirmatively strike those individual entries that it deems unreasonable," nor must it

provide a " 'specific explanation supporting each reduction.' " *Id.*, ¶ 29. The court upheld the fee reduction, distinguishing *Fitzgerald*, where the court simply cut the requested fees in half without holding an evidentiary hearing, and it admitted that the award was a " 'wild guess.' " *Id.*, ¶ 28 (quoting *Fitzgerald*, 183 Ill. App. 3d at 661)).

¶ 19    Here, as in *Kane*, the trial court conducted an extensive evidentiary hearing. Also as in *Kane*, the record shows that the court "was engaged, asked numerous pointed questions, and gave due consideration to the fee petitions, as well as the billing statements attached thereto." <u>Kane</u> at ¶28. The court noted specific entries or groups of entries with which it was concerned. Contrary to Jakubs's argument, the court was not required to identify which "specific itemized billing" entries were not reasonable or necessary.

¶ 20    Jakubs argues that the court "misapplied the facts" in making its ruling. The court found that the parties' marriage was short, the issues in the case were not complex, that it conducted only three hearings, and that " 'very little advancement' " of the case occurred during Jakubs's representation. Jakubs insists that the case involved complex issues, such as longstanding health issues of the parties' child, respondent's preoccupation with obtaining his personal property, complex support and maintenance, and petitioner's three emergency motions during its tenure in the case.

¶ 21    Respondent answers that, with the exception of one emergency motion that was later withdrawn by petitioner, the child's health was not an issue. Respondent contends that, despite the inordinate amount of time allegedly spent on personal-property issues, no substantive resolution of those issues occurred during Jakubs's tenure, and that the maintenance and support issues involved nothing more than applying the statutory guidelines. Respondent further notes that the only substantive order entered while Jakubs represented him, the temporary support order,

resulted from what the court called a "miscommunication at best." Respondent's obligation was excessive and had to be renegotiated by successor counsel.

¶ 22    The trial court did not abuse its discretion in reducing Jakubs's fees. Jakubs does not dispute the court's conclusion that, despite its billing more than $22,000, "very little advancement" occurred during its representation of respondent. Regardless of who was at fault for the failure to advance the case or whether all of Jakubs's actions were ultimately successful, the evidence supported the court's ruling that the only issue was whether its requested fees were unreasonable. In that regard, the court could consider that Jakubs's representation was largely ineffectual and conferred few, if any, tangible benefits on its client. See *id.*, ¶ 25 (court may consider, *inter alia*, the benefit to the client from the attorney's actions).

¶ 23    Jakubs contends that the trial court erred by expressing concern about its billing entries after the attorney-client relationship broke down. It argues strenuously that the court erred in finding that there was a "miscommunication" regarding the temporary support order. Jakubs contends that respondent agreed to the substance of the order and changed his mind later. Respondent presents a much different version, lending support to the court's finding that there was a "miscommunication." In any event, it is undisputed that respondent's dissatisfaction with the temporary support order contributed to the breakdown of his relationship with Jakubs, as the firm moved to withdraw two weeks later. Jakubs does not explain how it would be entitled to more fees if, in fact, respondent simply had changed his mind about the reasonableness of the order. Thus, we do not consider whether the order resulted from a miscommunication.

¶ 24    Jakubs further contends that petitioner filed two emergency motions after it moved to withdraw and, as it still represented respondent at that point, it was ethically obligated to respond to them. See Ill. Rs. Prof'l Conduct R. 1.16(b) (eff. Jan. 1, 2010). However, as respondent points

out, neither motion required a substantive hearing. Thus, the amount of time necessary to protect respondent's interests was minimal, and the court could discount the requested fees on that basis.

¶ 25    Jakubs's second principal contention is that the trial court erred by failing to enforce the parties' settlement agreement. Paragraph 12 of the agreement is entitled "Attorneys' Fees" and provides as follows:

"A. Each party shall be responsible for the payment of the outstanding balance owed as of the entry of the Judgment for Dissolution of Marriage of the attorneys' fees and costs incurred by him or her in connection with these proceedings and shall indemnify, save, and hold the other party harmless therefrom.

B. The parties have been advised of their right to (a) itemized fee and costs statements; (b) a hearing as to the reasonableness and necessity of their attorney's fees and costs; and (c) to hire separate counsel to represent them in connection with the attorney's fees and costs. MICHAEL and MEREDITH acknowledge that they have reviewed or will receive itemized statements for costs advanced and services rendered by each of their attorneys. Furthermore, each party knowingly waives any right he or she has against the other, to a contribution hearing as and for attorney's fees and costs."

¶ 26    Jakubs argues that paragraph 12 clearly provides that each party will be responsible for the "outstanding balance owed" to his or her attorneys, and thus respondent is obligated to pay the full amount billed. Without citing authority, Jakubs argues that subparagraph B shows that attorneys are intended third-party beneficiaries of this agreement. Respondent answers that Jakubs forfeited this argument by failing to present it to the trial court and that, in any event, the agreement does not evidence an intent to make Jakubs a third-party beneficiary. We agree with respondent on both points.

¶ 27 We need not consider Jakubs' third-party beneficiary theory, because generally, arguments not raised in the trial court are forfeited and cannot be raised for the first time on appeal. *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15. In any event, the settlement provision states that the parties have the right to itemized billing statements and to hire separate counsel; it does not show that they intended their attorneys to be third-party beneficiaries of the dissolution agreement or require them to pay whatever amount the attorneys choose to bill. Indeed, the same paragraph provides that the parties are entitled to a hearing on the reasonableness of fees. Moreover:

> "Third parties have rights under a contract only if they are intended beneficiaries; that is, the contracting parties must have intended to directly benefit the third parties by the performance of the contract. [Citations.] By contrast, an incidental beneficiary has no rights under a contract and lacks standing to sue to enforce its terms. [Citation.] In determining whether a third-party beneficiary is intended or incidental, courts consider the language of the contract and the circumstances surrounding its execution. [Citation.] Because parties typically enter into contracts to benefit themselves rather than third parties, there is a presumption against intended beneficiary status that can only be overcome by an implication so strong as to be practically an express declaration." (Internal quotation marks omitted.) *Doyle v. Village of Tinley Park*, 2018 IL App (1st) 170357, ¶ 33.

¶ 28 Nothing in paragraph 12 can be read as an "express declaration" that it was intended to give Jakubs a contractual right to collect its fees. And even if it could be so construed, paragraph 12 expressly makes any right to collect fees contingent on their reasonableness. The trial court found that $10,000 was reasonable, and respondent does not dispute his liability for that amount. Under these circumstances, the trial court did not abuse its discretion in reducing respondent's fee obligation to Jakubs.

¶ 29                              III. CONCLUSION

¶ 30    The judgment of the circuit court of Lake County is affirmed.

¶ 31    Affirmed.