**NOTICE**
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 230611-U

NO. 4-23-0611

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 5, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| ELIZABETH T. KESTNER-PENNELL, | ) | Circuit Court of |
|    Petitioner-Appellee, | ) | Livingston County |
|    and | ) | No. 15D15 |
| RUSSELL T. PENNELL, | ) | |
|    Respondent-Appellant. | ) | Honorable |
| | ) | Robert M. Travers, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Steigmann and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's determination of the amount of attorney fees owed to one of two of petitioner's attorneys was against the manifest weight of the evidence. The court did not abuse its discretion in allocating responsibility for those fees, in awarding retroactive maintenance and child support, and in awarding maintenance beyond the statutory guidelines.

¶ 2    Respondent Russell T. Pennell appeals various trial court orders entered in a dissolution of marriage proceeding which allocated the parties' responsibility for petitioner Elizabeth T. Kestner-Pennell's attorney fees, awarded petitioner retroactive child support and maintenance, and found that there was no written agreement between the parties about the term of maintenance.

¶ 3    We affirm in part, reverse in part, and remand for further proceedings on the reasonable amount of attorney fees as to Kraft, Wood, and Kelly, LLC.

¶ 4               I. BACKGROUND

¶ 5        Petitioner and respondent were married in July 2001 in Nevada. Two children were born of the marriage, one in 2004 and one in 2008; both children have special needs and significant disabilities. In February 2015, petitioner filed for legal separation. She subsequently amended her petition in 2016 to request dissolution of marriage. Both pleadings asked that respondent pay her reasonable attorney fees. Respondent filed a counterpetition seeking dissolution of marriage but did not request the payment of attorney fees.

¶ 6               A. Interim Rulings on Child Support and Maintenance

¶ 7        In July 2015, the trial court entered an order giving temporary custody of the children to petitioner and awarding maintenance of $703.80 (paid every other week) and child support of $243.70 (paid every other week). As part of that ruling, the court found that respondent's gross earnings were $60,996 and that petitioner had no income.

¶ 8        Petitioner moved to increase maintenance and child support in December 2015, asserting that respondent had obtained new employment in the State of Michigan. That motion was not called up for hearing and remained pending at the time of the 2020 hearings.

¶ 9               B. Grounds for Dissolution and Parenting Order

¶ 10        On February 10, 2016, the trial court found that irreconcilable differences had caused an irretrievable breakdown in the marriage and that efforts at reconciliation would be futile and not in the parties' best interests. In July 2016, the parties stipulated that petitioner would control all aspects of parental responsibility. After extensive litigation, a parenting plan was entered in August 2019.

¶ 11               C. Hearing on All Remaining Issues

¶ 12        The hearing on all remaining issues was conducted over five dates in 2020: July 6, July 10, September 10, September 11, and November 5. We observe that no transcripts from the

July 6 or September 11 hearings are included in the record. The following paragraphs summarize the testimony relevant to the issues on appeal.

¶ 13 On the issue of attorney fees, petitioner testified that she had incurred attorney fee expenses from three attorneys/law firms: Fellheimer Law Firm, Katy Kraft of Thompson & Weintraub (later Kraft, Wood, and Kelly, LLC (collectively, Kraft, LLC)), and attorney John Wright. Petitioner testified that Fellheimer Law Firm had been paid in full; that Kraft, LLC, had been paid $28,828.94 (via a loan from her aunt), with an outstanding balanced owed of $27,307.33; and that Wright had been paid $4000 (via a loan from her parents), with an outstanding balance owed of $5974.97. She stated that she was obligated to repay the two loans.

¶ 14 Petitioner attempted to introduce petitioner's exhibit 27, a bill from Kraft, LLC, and petitioner's exhibit 28, an affidavit concerning petitioner's debts to pay. Respondent objected to petitioner's exhibit 27 on the ground that the court had no "testimony from Ms. Kraft; and, you know, I think we talked last time that there's no current petition for attorney's fees on file." Respondent also objected as to the reasonableness of Kraft, LLC's bill. The same objections were raised and sustained as to petitioner's exhibit 28. The record does not contain an offer of proof or a copy of either exhibit.

¶ 15 Respondent testified that he had already paid some of petitioner's attorney fees and that he owed his own attorneys with Bloomington Law Group, $4265. The latter's itemized bill was admitted without objection.

¶ 16 D. February 25, 2021, Judgment of Dissolution

¶ 17 On February 25, 2021, the court entered a judgment of dissolution providing for child support and maintenance. The July 25, 2021, order further reserved all rulings on the requests for allocation of attorney fees. According to the court: (1) respondent's net annual income was

$61,740 in 2018, $65,712 in 2019, and $55,120 in 2020; (2) respondent's projected gross income for 2020 was $74,825.40; and (3) other than child support and maintenance, petitioner's projected income was zero. On this point, the court observed, "[Petitioner] has no income and has had no income for an extensive period of time. Her inability to generate income is the direct result of her care for the [parties'] minor, disabled children."

¶ 18        After reviewing the various factors set forth in section 504(a), (b-2) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/504(a), (b-2) (West 2020)), the trial court concluded that, "[a]ll in all, the court believes an award of maintenance to [petitioner] is appropriate. Additionally, guideline calculations support an award of maintenance." Concerning maintenance, the court ordered respondent to pay as follows: (1) $1714.83 per month for the period of January 1, 2018, up to but not including January 1, 2019; (2) $1825.85 per month for the period of January 1, 2019, up to but not including January 1, 2020; and (3) $1513.85 per month as effective January 1, 2020. The court added that the award of maintenance "shall be for a period of 92 months beginning January 1, 2018," on a "fixed-term" basis, with set termination conditions and a credit to respondent for temporary maintenance paid on or after January 1, 2018.

¶ 19        Child support was awarded on a similarly tiered basis, as follows: (1) $1012.57 per month for the period of January 1, 2018, up to but not including January 1, 2019; (2) $971.29 per month for the period of January 1, 2019, up to but not including January 1, 2020; and (3) $805.76 per month, effective January 1, 2020. Respondent was given credit for temporary child support paid on or after January 1, 2018.

¶ 20        Responsibility for the children's extracurricular activities (up to certain maximum amounts) and their uncovered health insurance expenses was also divided 80/20 between respondent and petitioner.

¶ 21 Concerning the distribution of property, the court stated that the property and debt schedule attached to its February 25 order contained "the court[']s award of real property, personal property and debt." It further noted:

> "Determination as to marital and non-marital items are also contained on those schedules. Awards as to debt reflect the credits and set offs discussed in this Judgment. All awards are made after consideration of the factors listed in 750 ILCS 5/503, including but not limited to those factors listed at 750 ILCS 5/503(d). Values/ totals are as of June 1, 2020[,] or as close thereto as the evidence allows."

¶ 22 Included in the debt schedule were the following attorney fees: Bloomington Law Group, $4265; Kraft, LLC, $28,828.94; and Wright, $5974.94. All fees were listed as marital debt, but the "payable by" lines were listed as "reserved," and the order specifically reserved ruling on the "requests for attorney's fees and costs."

¶ 23 E. Motion to Reconsider

¶ 24 Respondent's motion to reconsider the February 25 order raised two issues relevant here. First, in what he labeled count I of his motion, respondent challenged the duration of maintenance, arguing that the parties had agreed to maintenance for a period of 7.7 years per the statute and that maintenance should terminate on January 2, 2023. Count I further challenged the commencement date of the fixed-term maintenance, contending that the fixed term should have commenced on June 23, 2015, when he began paying temporary maintenance, rather than the January 1, 2018, date used by the court. Second, in count II of his motion, respondent challenged the decision to increase maintenance and child support obligations, charging that the December 2015 petition to increase maintenance and child support was never called for a hearing and should have been denied pursuant to local rules.

¶ 25          Following an initial hearing on the motion to reconsider on May 26, 2021, and a follow-up October 14 hearing, the trial court entered an order denying both counts of respondent's motion to reconsider.

¶ 26                    F. Attempted Appeal of February 25 and October 14 Orders

¶ 27          Respondent filed a notice of appeal in November 2021, attempting to appeal the trial court's February 25 and October 14 orders. Because the court had reserved rulings on the allocation of attorney fees, its orders were not final and appealable, and the appeal was dismissed for lack of jurisdiction. The appellate court's mandate issued on April 22, 2022.

¶ 28          G. Petition to Modify Child Support/Maintenance and for Finding of Arrearage

¶ 29          Although filed in October 2021, the petition for modification of child support and maintenance and for a finding of arrearage was not called for a hearing until May 22, 2023. According to the verified petition for modification, respondent's 2020 income purportedly increased from that projected in the dissolution of marriage order, justifying an increase in maintenance and child support. Respondent denied that his 2020 income actually increased as compared to 2019 and argued against an increase in child support and maintenance. Moreover, he filed an affirmative defense as to child support, claiming that the oldest child would be graduating high school in May 2023 and would no longer be a minor entitled to support.

¶ 30                    H. Motion for Support of Adult Disabled Child

¶ 31          Petitioner filed a motion seeking support and contribution for the parties' child who, although by then an adult, was still disabled. The petition asserted that a guardianship matter had been initiated seeking appointment of petitioner as guardian and that the nonminor had yet to receive support, such as social security or supplemental support, from any source other than his parents.

¶ 32                    I. Attorney Wright's Motion for Attorney Fees

¶ 33        In December 2020, petitioner's attorney Wright filed a petition seeking attorney fees to be paid by respondent. Wright attached a copy of his representation agreement with petitioner and a copy of his itemized bill for services and sought attorney fees for his work and that of his legal assistant in the amount of $12,164.75 (this included credit for the retainer and other payments). Wright's petition stated that, based on his experience, "the requested fee is reasonable for the work involved in this cause." We note the petition for attorney fees was not verified and was not accompanied by an affidavit of counsel.

¶ 34                         J. April 22, 2023, Hearing

¶ 35        The pending motions were called to hearing on April 22, 2023, including attorney Wright's petition for attorney fees. Although no transcript was filed for that hearing, we note the following docket entry made by the trial court:

> "[C]ause comes for several matters—first temporary matters—arguments made—
> Pet Exhibits A-B—Resp exhibits 1-2-3—court adopts exhibit B calculation—Atty
> [for petitioner] to draft order—Atty Fees for Mr. Wright petition arguments made—
> petition granted—over Atty [for respondent's] obj—order to be submitted."

A hearing on all remaining issues was scheduled for June 9.

¶ 36                         K. June 9, 2023, Orders

¶ 37        At the outset of the June 9, 2023, hearing, the trial court entered two orders relating to its oral rulings made at the April 22, 2023, hearing. The first order stated that the amount of fees owed to attorney Wright per the February 25, 2021, order, was $5974.97. The order then allocated responsibility for 80% of those fees to respondent and 20% to petitioner. The court declined to

rule on the allocation issue as to Bloomington Law Group and Kraft, LLC, reserving those issues for the June 9 hearing.

¶ 38    The trial court declined to modify maintenance, concluding that maintenance would remain at $1513.85 per month, as previously ordered on February 25, 2021. However, it modified child support to $906 per month, effective June 1, 2023. In so doing, the court stated, "The calculation reflects a statutory amount based upon one minor child. This Order does not address the issue of the adult child now alleged to be disabled."

¶ 39                L. June 9, 2023, Hearing

¶ 40    Following entry of the two written orders addressing matters addressed in the April 22 oral rulings, a hearing proceeded on the remaining issue of allocating the attorney fees of Bloomington Law Group and Kraft, LLC. Respondent argued that there had never been a petition for attorney fees filed—"that was an argument I had made at the prior hearing"—and further explained that there was a reference in the February 25 judgment indicating the fees were marital debt, and that respondent "had argued that there was not any foundation evidence for that billing and there was never any proof presented at trial about those bills, whether they had even been paid." Although attorneys for both law firms had been given notice of the June 9 hearing and an opportunity to appear, none was in attendance.

¶ 41    Respondent further asserted:

> "And when we were here before your Honor last time on May 22nd, I indicated that I had scoured the record, that [Kraft, LLC] had never filed a petition for fees and that [petitioner] had never filed a petition to obtain the fees of [Kraft, LLC]. There was no testimony offered at the final hearing in this case on when those fees were

incurred and whether they were ever paid. In fact, the testimony was that this portion that shows in the judgment was not paid."

Respondent further explained:

"So, I would assert that there is no basis to award the attorney's fees of [Kraft, LLC], that that issue was reserved for a determination on whether that request for fees was going to be allowed; and I think the failure of petitioner's counsel to file a petition, that issue has not been properly raised before the Court."

¶ 42     Petitioner responded, "We're not arguing that the other issues now have to have foundation or evidence. I mean, this is the debt schedule, the Court made its findings at the hearing, the Court entered a judgment in those amounts."

¶ 43     The trial court denied respondent's objection concerning petitioner's failure to file a petition for fees and concluded that the amounts of attorney fees had been included in the prior judgment order entered February 25, 2021, and that the only issue was how to split those between the parties. Accordingly, the court ruled:

"As far as the assessment against each of the parties, it was not that long ago that we considered this particular point; and I divided it 80%/20%. I would note mother has no income and probably is in a position where she could argue that she would not have any income for a considerable period of time. So, I'll go with the same 80/20 percent."

¶ 44     The trial court then requested that respondent's counsel prepare a written order, which was submitted on July 12, 2023.

¶ 45     M. July 12, 2023, Supplemental Judgment of Dissolution of Marriage

¶ 46 Following the June 9 hearing on all remaining issues, the trial court entered a supplemental written order on the issue of allocation of attorney fees on July 12, 2023. The court reiterated the award of attorney fees as follows: $4285 in favor of Bloomington Law Group; $28,828.94 in favor of Kraft, LLC; and $5974.97 in favor of attorney Wright. The court stated that "it was the intention of this Court on the date that the Judgment of Dissolution was entered [on February 25, 2021,] to award these attorney's fees in the amounts noted on the debt schedule attached to the judgment of dissolution." Concerning the allocation of attorney fees between the parties, the court divided responsibility for the attorney fees 80/20, with respondent bearing the larger share. The court further struck and denied attorney Wright's petition for attorney fees for failing to appear at the June 9 hearing.

¶ 47 The July 12 order disposed of all remaining issues.

¶ 48 N. Notice of Appeal

¶ 49 Respondent filed his notice of appeal on July 10, 2023, identifying the February 25, 2021, October 14, 2021, and June 9, 2023, orders and rulings as the subject of the appeal. We note that the notice of appeal was filed two days before the trial court entered its final written order disposing of all issues in the case.

¶ 50 This appeal followed.

¶ 51 II. ANALYSIS

¶ 52 Respondent raises the following issues on appeal: (1) whether the trial court properly calculated the amount of attorney fees; (2) whether the trial court properly allocated responsibility for the attorneys' fees between the parties; (3) whether the trial court abused its discretion in awarding retroactive child support and maintenance to January 1, 2018; and

- 10 -

(4) whether the court abused its discretion in finding that the parties did not enter into a binding agreement concerning the duration and termination of maintenance.

¶ 53                                    A. Jurisdiction

¶ 54        As noted above, respondent's notice of appeal was filed on July 10, 2023, two days prior to the entry of the trial court's final written order disposing of all issues. Although not raised by the parties, an appellate court has an independent obligation to consider its own jurisdiction. *In re Estate of Johnson*, 2023 IL App (4th) 220488, ¶ 14. The question before us is simple: whether respondent's notice of appeal, filed two days before entry of final judgment in the case, is sufficient to confer jurisdiction on this court.

¶ 55        Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017) governs the time for filing a notice of appeal and provides that "[a] notice of appeal filed after the court announces a decision, but before the entry of the judgment or order, is treated as filed on the date of and after the entry of the judgment or order." Here, the trial court orally announced its decision on the allocation of attorney fees related to Kraft, LLC, and attorney Wright at the June 9 hearing and ordered the preparation of a written order to that effect, which was filed on July 12. Under Illinois Supreme Court Rule 272 (eff. Jan. 1, 2018), "[i]f at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by the judge *** , the judgment becomes final only when the signed judgment is filed." Here, the written order was entered on July 12 and became final on that date. Given the language of Rule 303(a)(1), the July 10 notice of appeal was premature (because a final written order had not yet been entered), but "sprang to life" once the oral rulings made on June 9 were memorialized by the July 12 written order.

¶ 56        Moreover, we note that respondent's notice of appeal challenges the trial court's rulings on three separate dates: February 25, 2021, October 14, 2021, and June 9, 2023. On the

- 11 -

latter date, the court entered two written orders: one addressing Wright's attorney fees and the other addressing temporary child support and maintenance. However, the notice of appeal also references the trial court's "rulings and decisions" made on June 9, 2023, namely, its oral findings and rulings regarding the allocation of the fees of Kraft, LLC. These latter rulings, made orally during the June 9 hearing, were specifically referenced in the notice of appeal when respondent challenged the "findings and decisions of the Circuit Court made on June 9, 2023[,] with regard to the amount and the allocation of the attorney's fees reserved for ruling in the Judgment of Dissolution." The only allocation findings made during the hearing on June 9 concerned Kraft, LLC, and Bloomington Law Group.

¶ 57　　　　Illinois Supreme Court Rule 303(b)(2) requires that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." Ill. S. Ct. Rule 303(b)(2) (eff. July 1, 2017). We conclude that the notice of appeal is timely and specifies the appropriate orders being appealed. Therefore, we have jurisdiction to hear the merits of this appeal.

¶ 58　　　　　　　　　　B. Amount of Attorney Fees

¶ 59　　　　Respondent argues that the trial court's determination of attorney fees was against the manifest weight of the evidence. The court's February 25, 2021, order determined the amount of petitioner's attorney fees claimed due and owing to attorney Wright and Kraft, LLC, and respondent's attorney fees due to the Bloomington Law Group as part of its determination of marital debts. It further determined that these debts were marital property. Respondent contests the trial court's determination of the amount of fees for attorney Wright and Kraft, LLC, claiming there was no showing of reasonableness.

- 12 -

¶ 60        We begin by noting that three separate groups of attorney fees were awarded in the February 25 order: Bloomington Law Group, Kraft, LLC, and attorney Wright. Initially, we note that Bloomington Law Group represented *respondent*, and there is no challenge before this court as to the reasonableness of those fees. Instead, respondent challenges the amount of attorney fees owed to Kraft, LLC, and attorney Wright, which the court construed as marital debt. According to respondent, there is no evidence concerning the reasonableness of these fees.

¶ 61                              1. *Kraft, LLC's Attorney Fees*

¶ 62        As the record shows, petitioner offered the invoices from Kraft, LLC, into evidence. However, the court sustained respondent's objection to their admission and the exhibit was rejected. No offer of proof was made, and exhibit 27 was not contained in the record on appeal. As a result, there is no documentation—invoices, attorney testimony, or affidavit—in the record concerning the amount of Kraft, LLC's attorney fees, let alone the time spent on various tasks and associated hourly fees.

¶ 63        Illinois law requires that petition for fees "must specify the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor." *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 984 (1987). Moreover, it is the burden of the party seeking contribution to establish the value of the attorney's services and that the fees consist of reasonable charges for reasonable services. *In re Marriage of Kane*, 2016 IL App (2d) 150774, ¶ 25. Once the foregoing information is in evidence, the trial court may consider a variety of additional factors in assessing the reasonableness of the fees, such as (1) the skill and standing of the attorney, (2) the nature of the case, (3) the novelty or difficulty of the issues involved, (4) the importance of the matter, (5) the degree of responsibility required, (6) the usual and customary charges for similar work, (7) the benefit to the client, and (8) whether there is a

reasonable connection between the fees requested and the amount involved in the litigation. *Id*; *Kaiser*, 164 Ill. App. 3d at 984. In ruling on the reasonableness of the fees, the trial court may also rely on its own experience. *Kane*, 2016 IL App (2d) 150774, ¶ 25.

¶ 64 Although it is well settled that a trial judge may rely on his own knowledge and experience when deciding the value of the services provided (*In re Marriage of Powers*, 252 Ill. App. 3d 506, 508 (1993)), this principle is normally employed in cases in which there is at least *some evidence* to support the court's determination. For example, in *Clayton v. Planet Travel Holdings, Inc.*, 2013 IL App (4th) 120717, ¶¶ 25, 27, a petition for attorney fees was filed, and the trial court had before it various attorney affidavits concerning the hours billed, billing rates, and a description of the work performed. *Id*. ¶ 27. There, it was certainly appropriate to defer to the trial court's assessment of reasonableness based on the court's prior experiences and the court's observations of the attorneys in that case. *Id*. ¶ 25. Here, evidence is wholly lacking as to the time details of the attorneys' efforts.

¶ 65 The trial court's dissolution order of February 25, 2021, set forth the court's determinations as to the amounts of attorney fees due and owing. As of that date, the record contained no evidence—through documentation or testimony—as to the calculation or reasonableness of attorney fees for Kraft, LLC. Thus, the court's determination of the *amounts* of attorney fees was made on an incomplete record and based solely on petitioner's unsubstantiated testimony as to what she believed remained unpaid.

¶ 66 We conclude that the trial court's determination as to the amount of attorney fees remaining due and owing to Kraft, LLC, was against the manifest weight of the evidence. Respondent made numerous objections to the court's ability to determine the amount of attorney fees without some evidence as to the reasonableness of those amounts. Despite these objections

and the lack of any invoices for Kraft, LLC, the trial court nevertheless entered an order determining the amount of attorney fees. We therefore reverse that aspect of the trial court's judgment and remand the matter to the trial court for further proceedings as to the amount and reasonableness of the attorney fees of Kraft, LLC.

¶ 67                                    2. *Attorney Wright's Attorney Fees*

¶ 68        With regard to the court's determination of the amount of attorney Wright's fees, however, we conclude that respondent has failed to demonstrate that the trial court's determination was against the manifest weight of the evidence. Although the record from the "all remaining issues" hearing contains only petitioner's testimony as to what she owed, Wright subsequently filed his own petition for attorney fees (seeking recovery against respondent) in December 2020. A hearing on attorney Wright's fees was held on May 22, 2023, at which time the court heard arguments on that issue and, over respondent's counsel's objection, granted the petition. A follow-up order entered June 9, 2023, confirmed the amount of fees as $5974.97 and allocated responsibility at 80% to respondent and 20% to petitioner.

¶ 69        In *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001), the Illinois Supreme Court reiterated its long-standing rule that, "in order to support a claim of error on appeal the appellant has the burden to present a sufficiently complete record." (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). In fact, "[f]rom the very nature of an appeal it is evident that the court of review must have before it the record to review in order to determine whether there was the error claimed by the appellant." *Id.* (citing *Foutch*, 99 Ill. 2d at 391).

> "Where the issue on appeal relates to the conduct of a hearing or proceeding, this issue is not subject to review absent a report or record of the proceeding. Instead, absent a record, 'it [is] presumed that the order entered by the trial court [is] in

conformity with the law and had a sufficient factual basis.' " *Id*. (quoting *Foutch*, 99 Ill. 2d at 392).

¶ 70 Here, there is no transcript relating to the May 22, 2023, hearing; thus, we have no means to review what the parties discussed, what evidence was presented, or what the trial court considered in calculating the amount of Wright's attorney fees. The trial court might have heard testimony at that hearing on Wright's petition; it might have heard a concession from the other side about the amount and reasonableness. But without a proper record, how can we know? When considering an incomplete record, we must resolve against the appellant any doubts that arise therefrom. *Foutch*, 99 Ill. 2d at 392. For these reasons, we affirm the determination of the amount of attorney fees owed to attorney Wright of $5974.97.

¶ 71       C. Apportionment of Attorney Fees

¶ 72 Next, respondent argues the trial court abused its discretion in allocating responsibility for attorney fees at 80% to respondent and 20% to petitioner. Here, we review the trial court's decision under an abuse of discretion standard, asking whether no reasonable person in the trial court's position would make the same ruling. *In re Marriage of Phillips*, 244 Ill. App. 3d 577, 592, 595-96 (1993).

¶ 73       1. *Apportionment, Generally*

¶ 74 The trial court concluded that the attorney fees were to be considered marital debt. While this characterization may be legally incorrect (see, *e.g.*, *In re Marriage of Berberet*, 2012 IL App (4th) 110749, ¶ 58 (stating that attorney fees are not a marital debt)), we nonetheless find it immaterial because the court proceeded to allocate the fees between the parties. It is well settled that in a dissolution proceeding, the trial court may order one party to pay a reasonable portion of the other party's fees. *In re Marriage of Patel*, 2013 IL App (1st) 112571, ¶ 113. However, the

party requesting attorney fees must demonstrate both an inability to pay the fees and that the other party is able to pay. *Id.*

¶ 75 This does not require the party requesting the fee award to show that she is destitute. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 19 (quoting *Kaufman v. Kaufman*, 22 Ill. App. 3d 1045, 1050 (1974)). It is sufficient that payment would exhaust her estate or strip her of her means of support or undermine her economic stability. *In re Marriage of Ziemer*, 189 Ill. App. 3d 966, 969 (1989); see *In re Marriage of Schneider*, 214 Ill. 2d 152, 174 (2005) ("Financial inability exists where requiring payment of fees would strip that party of her means of support or undermine her financial stability."); *In re Marriage of Pond*, 379 Ill. App. 3d 982, 987 (2008) ("[T]he court should consider the allocation of assets and liabilities, maintenance, and the relative earning abilities of the parties."). A court may consider a party's prospective and current income in awarding attorney fees. *Milligan v. Cange*, 200 Ill. App. 3d 284, 292 (1990). Although the statute does not define the phrase "inability to pay" or provide a specific test for substantially similar financial situations, the factors under sections 503(d) and 504(a) are to be utilized to compare the relative financial standings of the parties. See 750 ILCS 5/503(d), 504(a) (West 2020); *In re Marriage of Sobieski*, 2013 IL App (2d) 111146, ¶ 49. The statutory factors are the means by which a trial court can assess whether a spouse has an inability to pay or whether the parties' financial situations are so similar that a contribution to attorney fees would be improper. *Sobieski*, 2013 IL App (2d) 111146, ¶ 49.

¶ 76 Here, the trial court found that respondent earned significant income and that, absent child support and maintenance, petitioner had no income. Moreover, petitioner's earning potential was drastically limited because of her need to care for the two disabled children. These are certainly proper considerations under sections 503(d) and 504(a) of the Act. Accordingly, we

conclude the trial court did not abuse its discretion in determining petitioner had an inability to pay and that respondent was able to pay, *i.e.*, that respondent should pay a portion of petitioner's attorney fees. Therefore, we affirm the trial court on that basis.

¶ 77                          2. *Requirement of Filing a Petition for Contribution*

¶ 78          Respondent next contends that the trial court erred in performing its attorney fees allocation because petitioner did not file a formal petition for contribution. According to respondent, section 503(j) requires a party seeking payment of attorney fees from the other party to file a petition for contribution. 750 ILCS 5/503(j)(1) (West 2020); see also *id.* § 508(a). Here, we observe that although petitioner did not file a separate petition for contribution, petitioner *did* request that respondent pay her attorney fees in her original petition for separation *and* in her amended petition for dissolution of marriage filed in October 2015. Petitioner's pleadings placed at issue her request that respondent pay her attorney fees.

¶ 79          We further conclude that the trial court complied with section 503(j)(2), which states that "[a]ny award of contribution to one party from the other party shall be based on the criteria for division of marital property under this Section 503 and, if maintenance has been awarded, on the criteria for an award of maintenance under Section 504." *Id.* § 503(j)(2). In its February 25 order, the trial court specifically stated that "all [property and debt schedule] awards [were] made after consideration of the factors listed in [section 503], including but not limited to those factors listed [in section 503(b)]." It is also apparent from the court's comments during the various hearings that it was also considering the criteria for an award of attorney fees under section 504(a), *i.e.*, the relative financial positions of the respective parties.

¶ 80          While certainly the better practice would have been for petitioner to have filed a petition for contribution to make her request clear, we conclude that she was not required to do so

- 18 -

when her pleadings contained such a request. Consequently, the trial court did not abuse its discretion in awarding contribution based on the request for contribution in petitioner's initial pleading.

¶ 81                                      3. *Allocation of Fees*

¶ 82          Concerning the allocation of fees, respondent argues the trial court abused its discretion in calculating the allocation of responsibility for petitioner's attorney fees. We note the trial court employed the same 80/20 split applied to the uncovered health care and extracurricular activity expenses for the children and concluded that it was reasonable to do so when allocating attorney fees. Accordingly, there is no showing the trial court abused its discretion by ordering respondent to pay 80% of petitioner's attorney fees. Therefore, we affirm the trial court's allocation of responsibility for attorney fees, with respondent to pay 80% and petitioner to pay 20%.

¶ 83          D. Petitioner's Motion to Increase Temporary Maintenance and Child Support

¶ 84          Respondent next challenges the trial court's decision to consider the 2015 petition to retroactively increase maintenance and child support, asserting that (1) the court's decision constituted an abuse of discretion because the December 2015 petition sat dormant and was not called for hearing and (2) there was nothing in the record to support retroactivity to the January 1, 2018, date. We note that there is no challenge to petitioner's entitlement to maintenance or child support or the amounts.

¶ 85          A trial court's decision to award retroactive maintenance and child support is reviewed under an abuse of discretion standard. *In re Marriage of Culp*, 341 Ill. App. 3d 390, 399 (2003); *In re Marriage of Samardzija*, 365 Ill. App. 3d 702, 707 (2006).

¶ 86                                      1. *Discretion to Consider Motion*

¶ 87    First, respondent's argument concerning the supposed dormancy of the petition for fees is based on local rule 5(C) of the Rules for the Eleventh Judicial Circuit, which provides as follows:

> "The burden of calling for hearing any motion previously filed is on the party making the motion. The court may at any time on its own motion set any such motion for hearing. *** If any such motion is not called for hearing within ninety (90) days from the date it is filed, the court may strike the motion without notice."
> 11th Judicial Cir. Ct. R. 5(C) (eff. Sept. 12, 2018).

Here, we note that the local rule gives a trial court considerable discretion as to whether to strike a motion that has not been called for a hearing, and it even gives the court the discretion to call the motion for a hearing *sua sponte*. *Id*. Indeed, other appellate court decisions have afforded a trial court leeway in interpreting its own rules. See, *e.g.*, *Givot v. Orr*, 321 Ill. App. 3d 78, 91 (2001) (holding that a trial court's determination of whether a party complied with Cook County Circuit Rule 2.3 would not be disturbed absent an abuse of discretion); see also *In re Marriage of Izzo*, 264 Ill. App. 3d 790, 792 (1994); *People ex rel. Carey v. Forberg*, 33 Ill. App. 3d 161, 372-374 (1975) (also reviewing Cook County Circuit Rule 2.3). Indeed, respondent concedes this discretion exists.

¶ 88    Although not providing an explanation in its initial February 2021 order, the court nonetheless provided insight into its ruling on this point during the May 26, 2021, hearing on respondent's motion to reconsider. In its response to respondent's argument that maintenance and child support should not be modified retroactively, the court explained:

> "This was all done purposely, it's not a mistake; and we're talking about balancing a good deal of issues. I would point out that the reason for the delay here was not

because the Court refused to hear this particular motion; it was because we were tied up with an abundance of problems related to the parenting time and the parental responsibilities on the children and some extensive hearings that took place. So, it wasn't a refusal of the Court to address this, just that we needed to address the child-related issues first."

¶ 89     The record supports the trial court's explanation concerning the delay in bringing the motion up for hearing and that there were numerous issues competing for the court's attention. As the record shows, the parties were engaged in extensive litigation on several issues (including a parenting plan, contempt, discovery, and responsibility for health care/extracurricular expenses) following the filing of the petition to increase maintenance and child support in December 2015, and many of these matters did not come for hearing until July 2020.

¶ 90     Whether a party's motion should be dismissed under local rule 5(C) is a matter of discretion. *Givot*, 321 Ill. App. 3d at 91. We find no abuse of discretion by the trial court in considering petitioner's 2015 petition to increase maintenance and child support rather than choosing to dismiss it.

¶ 91                    2. *Retroactive Awards, Generally*

¶ 92     Second, respondent argues the trial court abused its discretion in making a retroactive award of maintenance and child support. However, the law is well settled that a trial court's decision to award retroactive maintenance and child support is discretionary. *Culp*, 341 Ill. App. 3d at 399. In this case, the trial court thoroughly considered the financial positions of the parties and concluded that respondent's financial position changed, which warranted an increase from the amount of maintenance and child support initially set in July 2015. The record is replete with evidence to support the trial court's determination, and we find no abuse of discretion.

¶ 93 Respondent contests the award of increased maintenance and child support to January 1, 2018, but offers no explanation as to why that date was improper or how the trial court abused its discretion in making the award. Although there is no express explanation in the court's order concerning why the January 1, 2018, date was selected, our review of the record reveals there was no need to modify the amounts determined in the July 2015 temporary order for payments made prior to January 1, 2018, because the amount of maintenance and child support requested for the years 2016 and 2017 was lower than the amounts actually awarded in July 2015. Thus, there was no justification to modify maintenance and child support amounts awarded between the July 2015 order and January 1, 2018.

¶ 94 In contrast, the income amounts presented by petitioner in her petition to increase maintenance and child support shows that respondent earned more in the periods after January 1, 2018. The court's February 25, 2021, judgment of dissolution determined that respondent's net income was as follows: $61,740 in 2018; $65,712 in 2019; and a projected $74,825 for 2020. Each of these projected increases in income fully supports a maintenance determination *in excess* of the original 2015 amount, and each likewise supports an increase in child support. For example, based on respondent's 2018 net income of $61,740, he should have been paying monthly maintenance of $1714.83 and child support of $1012.57. Under the 2015 temporary order, respondent paid only $1524.90 and $528.02 per month, respectively.

¶ 95 The record supports the trial court's conclusion that respondent's income was higher in 2018 and beyond than it was when the initial temporary award was made in July 2015; this conclusion justifies the court's decision to modify maintenance and child support from the original levels set in July 2015. Admittedly, the record on appeal does not appear to contain the exhibits referenced by petitioner in advancing her written arguments before the trial court.

However, Illinois courts have long held that "in order to support a claim of error on appeal the appellant has the burden to present a sufficiently complete record." *Webster*, 195 Ill. 2d at 432. Moreover, absent a record, "it [is] presumed that the order entered by the trial court [is] in conformity with [the] law and had a sufficient factual basis." *Id*. (quoting *Foutch*, 99 Ill. 2d at 391-92). We therefore find no abuse of discretion in either the decision to award increased maintenance and child support or in making the increases retroactive to January 1, 2018.

¶ 96                                    E. Maintenance Commencement and Termination

¶ 97            Finally, respondent argues that the trial court erred by refusing to accept the purported stipulation made by the parties as to when maintenance commenced, when it should terminate, and its overall duration. According to respondent, the parties purportedly agreed that maintenance should commence with the initial July 2015 order and terminate after 7.7 years, on January 2, 2023. Petitioner also argued for 7.7 years' duration but asserted the commencement date was June 2015, when the temporary maintenance order was entered. We review a trial court's determination of the duration of maintenance under an abuse of discretion standard. *Culp*, 341 Ill. App. 3d at 394.

¶ 98                                    1. *Statutory Duration of Maintenance*

¶ 99            The duration of maintenance is governed by section 503(b-1) of the Act, which provides, in part, that "if the court finds that a maintenance award is appropriate, the court shall order guideline maintenance in accordance with paragraph (1) or non-guideline maintenance in accordance with paragraph (2) of this subsection (b-1)." 750 ILCS 5/504(b-1) (West 2020). If the duration of maintenance is determined under the guidelines, subsection (b-1)(1)(B) provides: "The duration of an award under this paragraph (1) shall be calculated by multiplying the length of the

marriage at the time the action was commenced by whichever of the following factors applies: \*\*\*

13 years or more but less than 14 years (.56)." *Id*. § 504(b-1)(1)(B).

¶ 100       If the guidelines are not appropriate, however, subsection (b-1)(2) provides that,

"[a]ny non-guidelines award of maintenance shall be made after the court's consideration of all

relevant factors set forth in subsection (a) of this Section." *Id*. § 504(b-1)(2). The factors are set

forth in subsection (a), such as the parties' respective financial positions, earning capacity, parental

responsibilities, and duration of marriage. *Id*. §§ 504(a)(1-14). Although the court must consider

all relevant factors, it need not give them equal weight. *In re Marriage of Nord*, 402 Ill. App. 3d

288, 293 (2010).

¶ 101       Moreover, according to subsection (b-2)(1)-(3), "[i]n each case involving the issue

of maintenance, the court shall make specific findings of fact, as follows:

"(1) the court shall state its reasoning for awarding or not awarding

maintenance and shall include references to each relevant factor set forth in

subsection (a) of this Section;

(2) if the court deviates from applicable guidelines under paragraph (1) of

subsection (b-1), it shall state in its findings the amount of maintenance (if

determinable) or duration that would have been required under the guidelines and

the reasoning for any variance from the guidelines; and

(3) the court shall state whether the maintenance is fixed-term, indefinite,

reviewable, or reserved by the court." *Id*. § 504(b-2)(1)-(3).

¶ 102       As the statutory language provides, the decision whether to follow the guidelines

when calculating duration is a matter of discretion. *Id*. § 504(b-1)(1), (2). This court will not disturb

the decision to award maintenance absent an abuse of the trial court's discretion. See *Schneider*,

214 Ill. 2d at 162. "A trial court abuses its discretion only where no reasonable person would take the view adopted by the trial court." *Id*. at 173. "The appellant, who seeks reversal, bears the burden of proving an abuse of discretion." *Id*.; *In re Marriage of Kasprzyk*, 2019 IL App (4th) 170838, ¶ 47.

¶ 103                    2. *Maintenance Duration in Accord With the Guidelines*

¶ 104          The parties were married on July 2, 2001, and petitioner filed for separation on February 24, 2015. Utilizing the provisions of section 504(b-1)(1)(B), the duration of an award "shall be calculated by multiplying the length of the marriage at the time the action was commenced by whichever of the following factors applies: *** 13 years or more but less than 14 years (.56)." 750 ILCS 5/504(b-1)(1)(B) (West 2020). Based on the parties' 13.8-year marriage, the presumptive duration of maintenance per the statute is 7.7 years. This is not in dispute.

¶ 105                    3. *Trial Court's Commencement and Termination Dates*

¶ 106          Respondent argues that the parties had stipulated that maintenance should run for 7.7 years and terminate on January 2, 2023. Respondent relies on section 502(a), which provides: "To promote amicable settlement of disputes between parties to a marriage attendant upon the dissolution of their marriage, the parties may enter into an agreement containing provisions for *** maintenance of either of them." *Id*. § 502(a). According to subsection (b) thereof, "The terms of the agreement, *** are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the agreement is unconscionable." *Id*. § 502(b). However, "*[a]ny agreement pursuant to this Section must be in writing*, except for good cause shown with the approval of the court, before proceeding to an oral prove up." (Emphasis added.) *Id.* § 502(a).

¶ 107    According to respondent, the stipulation was made *orally* during the September 10, 2020, hearing during the following colloquy:

> "[RESPONDENT]: I believe there was a date that you [respondent's counsel] and [petitioner's counsel] came up with sometime in the future, I think two years in the future; I think that's what it is.
>
> Q. January 2 of 2023?
>
> A. Yeah. That sounds right.
>
> THE COURT: Are the parties stipulating that maintenance is appropriate?
>
> [RESPONDENT'S COUNSEL]: Yes, for the statutory period.
>
> THE COURT: Correct?
>
> [PETITIONER'S COUNSEL]: Yes. Yes."

¶ 108    However, there was no written agreement. Respondent admits this during the second motion to reconsider hearing in October 2021. The trial court asked respondent's counsel, "[W]as there an agreement tendered to the Court, a stipulation as to the length of the maintenance?" Counsel responded, "There was not an agreement entered, but I am putting forth this petitioner's proposal and a record to—". The court then stated, "[T]hat's called a proposal," and "the Court can accept it or the Court can deny it." Respondent's counsel then added, "I agree the Court is absolutely correct, there was never a written proposal tendered."

¶ 109    Without a *written* agreement, section 502(a) is not implicated. *Id.* Although the trial court order did not expressly state that it found no agreement, it is clear from both the ultimate ruling and from the court's remarks during the motion to reconsider hearings that it found that there was no written agreement between the parties and that it was, therefore, free to determine the

duration of maintenance in accordance with section 504(b-1). We conclude, therefore, that the court did not abuse its discretion in making this determination.

¶ 110    Respondent seems to suggest that the parties' written closing arguments, each of which offered their view on the termination dates, statutory maintenance period, and the commencement dates, can suffice as the parties' "written agreement." To this end, counsel argued below that "when two parties present proposals that are substantially similar in terms of duration of the maintenance, I believe that constitutes an agreement." Respondent provides no authority for this proposition, and we cannot accept it. Because the statute requires the parties' written agreement, courts should not have to construct and construe such agreements from the parties' other written submissions. It is a simple and elemental thing for parties to reduce an agreement to writing, and we will not overlook the failure to do so in face of a clear statutory requirement.

¶ 111    At this point, we turn to whether the trial court abused its discretion in its determination of the duration of maintenance. As noted, the court awarded maintenance commencing January 1, 2018, for a period of 92 months, with a termination date of September 2025.

¶ 112    Looking at the trial court's February 25, 2021, order, it is clear the court considered section 504(a)'s factors when it determined maintenance. Indeed, the court went through each of the categories listed under section 504(a) and concluded that respondent had superior income and vocational skills; petitioner had no income or retirement benefits; respondent had retirement benefits; petitioner's earning capacity is severely impaired by her obligations to care for the children; and petitioner had made significant contributions to respondent's career, education and training "by maintaining a home and providing for the care of the parties['] minor children."

¶ 113    The trial court further explained its rationale during the May 26 hearing on the motion to reconsider. According to the court:

> "[T]his is probably the classic case for maintenance extendable past the guideline amounts. And are you telling me that you believe that that's improper or that you believe that just as a matter of convenience you want to cut it off at 7.7 years? I mean, give me a reason, because this is not something that was done by mistake, okay, this is something that the Court considered pretty thoroughly."

¶ 114    The trial court then asked respondent's counsel a hypothetical question, adding in multiple disabled children, "Your position would be the guidelines say 7.7 years irrespective of the various findings that the Court has to make as to her eligibility for maintenance." Counsel responded, "[I]t's a child support issue," to which the court answered: "But she's never going to work again because she has the possession of the children, a factor that I have to consider for maintenance." The topic was raised again at the second (October 14) hearing on the motion to reconsider. Speaking on the stipulation, the court said:

> "Number one, I don't believe the Court is bound by any stipulation as to the duration of maintenance. We had a hearing here because the parties didn't agree on anything. We had extensive hearings in relation to the amount of income and needs of the respective parties.
>
> This is a unique case because of the children and their disabilities and the burden that places on the mother in relation to her need for income."

¶ 115    The trial court continued: "I would point out that the Court has the authority to deviate from the guidelines." It went on, stating:

"Subsection (a) [contains] all of the factors that were discussed and findings were made in detail in the judgment, okay, the needs of the parties, the tax consequences, sources of public and private income, all of that. That states quite clearly that the Court has the discretion to deviate from the guideline amounts; and certainly in this instance, because of the children and their disabilities and the burden that places on the mother financially, it's an appropriate circumstance to deviate the duration that's suggested."

¶ 116    Here, we conclude that the trial court acted within its discretion in awarding maintenance based on subsection (b-1). Moreover, we conclude that the court adequately explained its rationale for its ruling, thus complying with subsection (b-2)(1-3). The court's February 25 order references the factors set forth in section 504(a) as required by subsection (1); it explained its deviation from the guidelines under paragraph (1) during the motion to reconsider hearings; and finally, it stated in the February 25 order that maintenance was for a fixed term. We find no abuse of discretion.

¶ 117    As an additional point, respondent contends that the trial court erred in not awarding him a credit for those amounts of maintenance and child support paid under the July 2015 order and up to the January 1, 2018, date. However, there was no need to give a credit for those years because the adjusted amounts of maintenance and child support did not exceed the prior amounts owed and paid per the July 2015 order. For those dates prior to January 1, 2018, respondent owed nothing more than had already been paid. However, the increased amounts of maintenance and child support ordered retroactively to January 1, 2018, *exceeded* the original maintenance and child support amounts required under the July 2015 temporary maintenance order. Thus, the court

ordered respondent to pay the difference between what was previously paid under the July 2015 order and the newly determined amounts. We find no abuse of discretion.

¶ 118        Finally, we conclude that the trial court's use of January 1, 2018, as the commencement date for fixed-term maintenance, rather than the June 2015 date advanced by respondent, was not an abuse of discretion. Section 1.5 of the Act provides that, "[i]n the discretion of the court, any term of temporary maintenance paid by court order under Section 501 may be a corresponding credit to the duration of maintenance set forth in subparagraph (b-1)(1)(B)." 750 ILCS 5/504 (West 2020). As we have noted, a trial court has considerable discretion in setting an appropriate period of maintenance. See, *e.g.*, *id.* § 504(b-1)(2); *Nord*, 402 Ill. App. 3d at 305. Because the trial court found the facts of this case were "unique" and that deviation from the statutory maintenance guidelines was appropriate, it was free to fashion a duration that fit the needs of the case.

¶ 119        Respondent's position implies that the trial court was dealing with a fixed term for the payment of maintenance such that determination of the commencement date would automatically determine the date of termination. However, because we concluded the court was not obligated to limit the duration of maintenance per the statutory guidelines and could make its own determination of a reasonable duration, it was free to award maintenance commencing January 1, 2018, and concluding in September 2025. That the ultimate measurement of this period might turn out to be 92 months is a byproduct of the process, not its determining cause. The beginning and ending dates were chosen for a reason, and respondent should not assume that changing one would require a change to the other.

¶ 120        We find no abuse of discretion.

¶ 121                              III. CONCLUSION

¶ 122        For the reasons stated, we reverse the trial court's judgment determining the amount of attorney fees as to Kraft, LLC, but affirm the court's judgment in all other respects.

¶ 123        Affirmed in part and reversed in part; cause remanded.